**Caption in compliance with D.N.J. LBR 9004-1(b)**
NORGAARD O'BOYLE & HANNON
184 Grand Avenue
Englewood, NJ  07631
(201) 871-1333
Counsel to Plaintiff
By:    Brian G. Hannon, Esq. (BGH -3645)
           bhannon@norgaardfirm.com

|  |  |
|---|---|
| In re: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY NEWARK VICINAGE |
| ALEXANDER HASELKORN, | Chapter 13 |
|  | Case No. 19-32984 (JKS) |
| Debtor. |  |
| ALEXANDER HASELKORN, Chapter 13 debtor, | Adversary No. |
| Plaintiff; v. DAVID SAFIR, Individually; DLS Billing and Consulting Corp. And John Does 1-5 | **COMPLAINT TO AVOID TRANSFERS PURSUANT TO 11 U.S.C. SECS. 544, 547, AND 548 AND TO RECOVER TRANS-FERRED PROPERTY OR ITS VALUE PURSUANT TO 11 U.S.C. SEC. 550, AND AND FOR RELATED RELIEF** |
| Defendants. |  |

Alexander Haselkorn, Chapter 13 Debtor ("Plaintiff"), through his Counsel Norgaard O'Boyle & Hannon, by way of Complaint to Avoid Transfers Pursuant to 11 U.S.C. Sec. 544, 547 and 548 and to Recover Transferred Property or its value Pursuant to 11 U.S.C. Sec. 550, and for Related Relief against the Defendants David Safir, DLS Billing and Consulting Corp. and John Does 1-5 alleges as follows:

## JURISDICTION AND VENUE

1. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Secs. 157(a) and 1334(a). The matter is a core proceeding pursuant to 28 U.S.C. Secs. 157(b). Venue is properly in this Court under 28 U.S.C. Sec. 1409.

2. The Debtor, through his counsel, Norgaard O'Boyle & Hannon, has authority to bring this matter pursuant to an Order entered on June 16, 2020.

## AS TO ALL COUNTS

**The Parties:**

3. Alexander Haselkorn ("Debtor' or "Plaintiff") commenced the above captioned bankruptcy case by filing a petition for relief under Chapter 13 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with this court on December 20, 2019 (the "Commencement Date").

4. Upon information and belief, Defendant David Safir ("Safir") is a resident of New York State and has a principal residence located at 245 Exeter Street, Brooklyn, NY 11235.

5. Upon information and belief, Defendant DLS Billing and Consulting Corp. ("DLS") is a domestic business corporation formed in the State of New York (both Safir and DLS to be collectively referred to herein as the "Defendants"). It maintains its principal place of business at 245 Exeter Street, Brooklyn, NY 11235.

6. The Debtor is a physician and board-certified general surgeon specializing in occupational medicine, trauma, and hand surgery. In 2017 the Debtor purchased Jamaica Wellness Medical, P.C. ("Jamaica"), a medical practice located in Brooklyn, NY. Safir was the business manager for Jamaica. In his role, Safir directly handled billing and collections for Jamaica.

7. On or about November of 2019, Safir offered to purchase the receivables of

Jamaica. Safir communicated to the Debtor that the total amount of receivables at that time amounted to approximately $56,000.00.

8. Safir offered to pay the Debtor $10,000.00 for all receivables due to Jamaica and to settle any amount due from Plaintiff to Defendants. At the time Safir approached the Debtor with his offer to purchase the receivables of Jamaica, the Debtor was under great medical and financial strain. He had recently been acquitted of criminal charges filed against him and Safir, among others, stemming from their operation of Jamaica.

9. The Debtor's estate had suffered greatly, and the majority of his assets had been disposed of trying to survive. When Safir approached the Debtor and proposed purchasing the receivables of Jamaica, the Debtor desperately needed funds to pay his household expenses.

10. On November 26, 2019, the Debtor entered into an Agreement for Assignment of Jamaica's Accounts Receivable (the "Agreement") with Safir and Safir's company, DLS. Pursuant to the Agreement, Safir and DLS paid the Debtor $10,000.00 for an assignment of all Jamaica's receivables. The Debtor was repeatedly advised by the Defendants that the total outstanding receivables of Jamaica amounted to only $56,000.00. The Debtor accepted the terms of the Agreement in reliance on this representation.

11. After entering into the Agreement with the Defendants, the Debtor was contacted by Melissa Betancourt, Esq. She expressed surprise in his willingness to enter into the Agreement given the substantial amount of Jamaica's outstanding receivables.

12. Thereafter the Debtor learned that Safir had at least 7 separate attorneys/law firms prosecuting collections on behalf of Jamaica. Andrew Saraga, Esq. apparently had/has $90,000.00-$100,000.00 in uncollected claims while the law firm of Kopelevich & Feldsherova had/has claims amounting to approximately $362,000.00. The debtor spoke to Galina Kopelevich, Esq. and

confirmed this figure.

13. The outstanding receivables that were placed with Melissa Betancourt, Esq. for collection amounted to approximately $100,000.00. Additionally, Phillips, Krantz & Associates, LLP, Leon Kucherovsky, Esq, Russell Friedman Law Group, LLP and the Ursulova Law Offices, PC were all prosecuting collection claims on behalf of Jamaica.

14. Safir coordinated all collection efforts on behalf of Jamaica and was the point of communication with each and every collecting law firm prior to entering into the Agreement. Safir was aware that the receivables vastly exceeded the $56,000.00 figure that he misrepresented to the Debtor to induce him to enter into the Agreement.

15. Upon information and belief, the total value of the receivables sold by the to Safir and DLS was/is at least worth $552,000.00, and possibly more.

16. If the Debtor is able to retrieve these assets, or the reasonably equivalent value thereof, he would likely be able to satisfy 100% of the claims filed by the creditors in his chapter 13 bankruptcy case.

## COUNT ONE
**(Avoidable Preference – 11 U.S.C. Sec. 547)**

17. Plaintiff repeats and realleges paragraphs 1 through 16 as if the same were again set forth at length.

18. The transfer of the Debtor's assets was made 90 or fewer days prior to the date on which the Debtor filed its petition for bankruptcy relief.

19. At the time of the transfer the Debtor was insolvent, as his debts and obligations exceeded the value of his assets.

20. The Debtor is presumed to have been insolvent at the time of the transfer.

21. The transfer was made for or on account of antecedent debt(s) which the Defendants

4

assert was owed by the Debtor.

22.  The Defendants are "creditors" of the Debtor within the meaning of 11 U.S.C. Sec. 101(10).

23.  The total value of the transfer is approximately $552,000.00.

24.  The transfer enabled the Defendants to receive more than they would have received if: (i) the Debtor's case was a case under Chapter 13 of the bankruptcy code; (ii) the transfers had not been made, and (iii) the Defendants' received payments on their claims to the extent provided by the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests this court to enter judgment:

A.  Avoiding the transfers described in Paragraph 10, above;

B.  Permitting Plaintiff to recover from the Defendants and any subsequent transferee the transferred property described in Paragraph 10, above, or the value of such transferred property;

C.  Granting Plaintiff a money judgment against each of the Defendants, jointly and severally, in the amount of $552,000.00;

D.  Disallowing all claims asserted by any of the Defendants pursuant to 11 U.S.C. Sec. 502(d);

E.  Awarding Plaintiff attorneys fees and costs; and

F.  Granting such other and further relief as is just and appropriate.

## COUNT TWO
### (Avoidable Fraudulent Transfer – 11 U.S.C. Sec. 548)

25.  Plaintiff repeats and realleges paragraphs 1 through 24 as if the same were again set forth at length.

26.  The transfer of the Debtor's assets as detailed in the Agreement was made within two years of the filing of the Debtor's Chapter 13 case.

27. The Defendants received substantial assets from the Debtor in exchange for less than the reasonably equivalent value for same.

28. The Defendants caused the Debtor to make the transfer described in Paragraph 10, above, and the Debtor did not receive reasonable equivalent value in exchange.

29. The Debtor was insolvent on the date of the transfer, or became insolvent as a result of such transfers.

30. At the time of each of the transfers, the Debtor was engaged in a business or transaction, or was about to become engaged in a business or transaction, for which the property remaining with the Debtor was unreasonably small.

31. At the time of each of the transfers, the Defendants intended or believed that the Debtor would incur debts beyond his ability to repay as such debts matured.

32. Defendant Safir participated in and directed the other Defendant's actions and intended or believed that after the transfers the Debtor would incur debts beyond his ability to repay.

WHEREFORE, Plaintiff respectfully requests this court to enter judgment:

A. Avoiding the transfers;

B. Permitting Plaintiff to recover the transferred property or its value from the Defendants and/or from any subsequent transferee;

C. Granting Plaintiff a money judgment against each of the Defendants, jointly and severally, in the amount of $552,000.00;

D. Disallowing all claims asserted by any of the Defendants pursuant to 11 U.S.C. Sec. 502(d);

E. Awarding Plaintiff attorneys fees and costs; and

F.      Granting such other and further relief as is just and appropriate.

                Norgaard O'Boyle & Hannon
                Counsel to Plaintiff
                Alexander Haselkorn

Dated: 7/15/2020                By: /s/ Brian Hannon
                                          Brian Hannon, Esq.