**UNITED STATES BANKKRUPCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
--------------------------------------------------------------------X

**Dahiya Law Offices, LLC**
By: Karamvir Dahiya, Esq.
75 Maiden Lane Suite 506
New York NY 10038
Tel: 212 766 8000
karam@dahiya.law
*Pro Hac Application Pending*

**THE LAW OFFICE OF NARISSA A. JOSEPH, P.C.**
**Narissa A Joseph, Esq.**
305 Broadway, Suite 1001
New York, NY 10007
Phone: 212-233-3060
Fax: 646-607-3335
Email: njosephlaw@aol.com
--------------------------------------------------------------------X        Case No. 19-32984(JKS)

In Re:

Alexander Haselkorn

                                        Debtor.                    Chapter 13
--------------------------------------------------------------------X
Alexander Haselkorn,

                            Plaintiff,

                                                            Hon. John K. Sherwood

David  Safir and DLS Billing & Consulting Corp.,

                            Defendants.

                                                            (Case 20-01405-JKS)

--------------------------------------------------------------------X

**NOTICE OF MOTION FOR (1) VACATUR OF DEFAULT, (2)
DISMISSAL OF THE ADVERSARY, (3) TRANSFER OF THE VENUE
& (4) PRODUCTION OF MEDICAL RECORD OF DEBTOR**

HEARING DATE/TIME:     Thursday the September 24, 2020 at 10:00 a.m.

ORAL ARGUEMNT:        Requested

BEFORE:

                HON. JOHN K. SHERWOOD, UNITED STATES BANKRUPTCY JUDGE

i

**PLESE TAKE NOTICE** on Thursday, the September 24, 2020 at 1:00 am, the defendants David Safir and DLS Billing & Consulting Corp. (the "Defendants")  will move for vacatur of the default, dismissal of the underlying Adversary Complaint against the Defendants  pursuant to FRCP 55(c) and 12(b)6) applicable to the Bankruptcy Court procedure pursuant Federal Rules of Bankruptcy Procedure, 7055 and 7012 respectively, with an additional request for transfer of venue of the Adversary Proceeding to Eastern District of New York, New York pursuant to 28 U.S.C. §§ 1404(a), 1412. Also, requested is medical records of the Debtor, Alexander Haselkorn pursuant to FRCP 35 as applicable to bankruptcy proceedings  through Rule 7035

**PLEASE TAKE FURTHER NOTICE** that in support of the motion, the Defendants shall rely upon the affidavit of the defendant David Safir and the Memorandum of Law accompanying this Notice of Motion.

**PLEASE TAKE FURTHER NOTICE** that oral argument is requested.

THE LAW OFFICE OF NARISSA A. JOSEPH, P.C.
**Narissa A Joseph, Esq.**
305 Broadway, Suite 1001
New York, NY 10007
Phone: 212-233-3060
Fax: 646-607-3335
Email: njosephlaw@aol.com

**DAHIYA LAW OFFICES, LLC**
By: **Karamvir Dahiya, Esq**.
 75 Maiden Lane Suite 506
 New York NY 10038
 Tel: 212 766 8000
 karam@dahiya.law
 *Pro Hac Application Pending*

Dated: August 26, 2020

**UNITED STATES BANKKRUPCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
-------------------------------------------------------------X
In Re:                                                    **Case No. 19-32984-JKS**

        **Alexander Haselkorn,**

                **Debtor,**

-------------------------------------------------------------X   **Adversary No. 20-01405-JKS**
                                           **(Before Hon. John K. Sherwood)**

        **Alexander Haselkorn,**
                **Plaintiff,**
        **v.**

        **David Safir, DLS Billing and**
        **Consulting Corp**
        **John Does 1-5,**
                **Defendants.**
-------------------------------------------------------------X

**Affirmation in Support of Motion**
**to Vacate the Default and Dismiss the Complaint[1]**

David Safir and DLS Billing Consulting Corp (the "Defendants") through the undersigned

respectfully submit the following in support of the motion to vacate the default and dismiss the

complaint:

## **JURISDICTION**

    1. The United States Bankruptcy Court for the District of New Jersey (the "Court") has

jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2), however with a private right dispute.

---

[1] It is clear that this Complaint is commenced in bad faith by Alexander Haselkorn and or a proxy one by his wife, Roberta Haselkorn, as Alexander Haselkorn claimed medical, mental and physical incapacity/disability to face a criminal trial in New York. It is based on his attorneys and Mr. Haselkorn wife assertions that Mr. Haselkorn is not medically fit that the New York State Attorney General had to drop the criminal charges against him. The question arises if he was medically unfit for the criminal trial, how did he become fit for this lawsuit/trial. It is also clear that the present bankruptcy petition is filed by Alexander Haselkorn himself. How could he have filed a bankruptcy without necessary appointment of a guardian, if he is incompetent. See FRBP 1004. We do not have access to his medical records, as they are private, but we are requesting them now.  Also, his criminal case has been sealed owing to medical paperwork submitted therein.

2. Venue in the Court might be proper for the Debtor pursuant to 28 U.S.C. §§ 1408 and 1409, however it does not comport with the defendants convenience or due process.

3. The statutory bases for the relief requested herein are FRCP 55(c), 12(b)6), 35 applicable to the Bankruptcy Court procedure pursuant Federal Rules of Bankruptcy Procedure, 7055, 7012, 7035 respectively. Also sought is the venue transfer pursuant to 28 U.S.C. §§ 1404(a), 1412.

## PROCEDURAL SUMMARY

4. Mr. Alexander Haselkorn (Haselkorn) commenced the aforesaid Adversary on July 15, 2020. The Court issued the summons on July 15, 2020.  Haselkorn's attorneys mailed as per their own affidavit of service, a copy of the Summons and Complaint on July 16, 2020.  The defendant David Safir (Safir) had left for Ukraine on July 18, 2020 and came back on August 2, 2020. Safir Affidavit. Upon his return he is told by his wife about some papers. As is evident from his Affidavit, Mr. Safir was very concerned and feel strongly about the falseness of the allegation, he immediately scoured the market to find a lawyer to represent him and his company.  Mr. Safir is the sole owner of the DLS Billing Consulting Corp a New York company (DLS Billing).

5. Mr. Safir engages the undersigned the very week of default to defend him and his company.  Immediately upon being engaged, the undersigned requested Mr. Narissa Joseph to sponsor the undersigned on a *pro hac* basis. The application for *pro hac* admission is filed on August 20, 2020. The motion for *pro hac* admission stated the following date and time:

> The following transaction was received from Narissa A. Joseph entered
> on 8/19/2020 at 11:04 PM EDT and filed on 8/19/2020.

Dkt # 5. The very next morning, the plaintiff's attorneys, Brian Gregory Hannon makes bad faith attempt to thwart Mr. Safir from effective defense of his case by filing an application for entry of default. His filing of default entry states the following date and time.

> The following transaction was received from zlh entered on 8/20/2020 at
> 8:43 AM EDT and filed on 8/20/2020

2

Dkt # 6. There was absolutely no indicia of delay etc. on Mr. Safir's part. The default should not have been entered or asked forth under the said circumstances.

## **RELIEF REQUESTED**

6.  By this Motion, the Defendants requests entry of the Order, pursuant to FRCP 55(c) and 12(b)6) applicable to the Bankruptcy Court procedure pursuant Federal Rules of Bankruptcy Procedure, 7055 and 7012, (1) vacatur of the default entry; (2) dismissal of the Adversary Complaint; (3) transfer of venue, pursuant to 28 U.S.C. §§ 1404(a), 1412 in case the Complaint is not dismissed; (4) medical records of the Haselkorn reflecting his capacity or incapacity to sue or be sued; and the defendants demands an article III adjudication of the dispute.

## **BASIS FOR RELIEF**

**A.    Cause Exist for Vacatur of the Clerk's Entry of Default**

7.   It is clear that Mr. Safir was out of the country from July 18, 2020 until August 2, 2020. So, Mr. Safir is given 16 day's time to respond—this simply does not comply with the statute requirement and due process. FRBP 7012 warrants "an answer within 30 days after the issuance of the summons." FRBP 7012(a).  Unlike, FRCP 4(e) dealing with the district court, FRBP 7004(b) provides for mailing the summons and complaint to the defendant by first class mail postage prepaid to complete service.  The 30 days' time might be enough for those properly served, herein this case, Mr. Safir was out of country and to hold him responsible to answer within 16 days might be too short a time, unless there was a calamitous emergency or a relief was being requisitioned pursuant to order to show cause.  As the Affidavit of Mr. Safir states, he desperately looked for an attorney to defend his case, as soon as he came know about the summons and that too took a few days and hours.

8. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Even though the summons and complaint might have complied with the statutory requirement of mailing etc., FRBP 7004, it does not meet the due process,

> In *Robinson v. Hanrahan,* we held that notice of forfeiture proceedings sent to a vehicle owner's home address was inadequate when the State knew that the property owner was in prison. 409 U.S., at 40, 93 S.Ct. 30. In *Covey v. Town of Somers,* 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956), we held that notice of foreclosure by mailing, posting, and publication was inadequate when town officials knew that the property owner was incompetent and without a guardian's protection. *Id.,* at 146–147, 76 S.Ct. 724.

*Jones v. Flowers,* 547 U.S. 220, 230, 126 S. Ct. 1708, 1716, 164 L. Ed. 2d 415 (2006). The Debtor was out of country for a substantial amount of time when the service was being effectuated.

9. As per the docket, time the period to answer has expired, however here it is for reasons that are more than excusable neglect under Rule 9006(b)(1) (must show that the failure to act was the result of excusable neglect). See *In re South Atlantic Financial Corp.*, 767 F.2d 814, 13 Bankr. Ct. Dec. (CRR) 752, Bankr. L. Rep. (CCH) P 70680 (11th Cir. 1985). See also, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 388, 113 S. Ct. 1489, 1495, 123 L. Ed. 2d 74 (1993) ("Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, *as well as by intervening circumstances beyond the party's control.*") (emphasis provided). "[A] party may be prevented from complying [with the imposed deadlines]by forces beyond its control, such as an act of God or unforeseeable human intervention." Id at 387. Mr. Safir was out of country. And as soon he came back, he diligently attempted to find a good lawyer to represent him.

10.  We request vacatur of the clerk entry of default, even though the entry of default was defective.  *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir. 1993)(traditional view that defaults are disfavored and reserved for rare occasions, so that when doubt exists as to whether default or default judgment should be granted or vacated, doubt should be resolved in favor of defaulting party).  There is merit to the Saffir's contention that the underlying Complaint fails to state a cause of action—Safir wants to contest the proceeding.  See *Belcourt Pub. Sch. Dist. v. Herman*, 786 F.3d 653, 661 (8th Cir. 2015) ("Put simply, there is a 'judicial preference for adjudication on the merits'").  Also, the entry of default was improper to start with. It did not give us a chance to contest.  We wake up the next day to find default. Law does not permit that.

**B.    Entry of Default is a Legal Error**

11.  We had filed a motion for *pro hac* admission in this case on August 19, 2020, a day before the entry of default on August 20, 2020. That is deemed to be an appearance.  At least it evinced our "intent to defend."  See *In re Clark, 2010* WL 2639842, at 3 (W.D. Wash. June 28, 2010) And the Plaintiff's counsel did not comply with the rules before seeking of entry of default—they violated rule 55. The defendants through the undersigned were entitled to Rule 55 notice of motions for default judgments or orders.  Because the Rule is mandatory, failure to provide the required Rule 55 notice requires vacatur of the default judgment. *Press v. Forest Laboratories, Inc.,* ("Where notice of a motion for a default judgment is required, but not given, such a judgment entered without notice must be vacated as a matter of law"); *In re Roxford Foods, Inc.*, 12 F.3d at 881-82 (9th Cir. 1993) ("the failure to give required Rule 55(b)(2) notice violated due process, and the [default] judgment should be vacated").

12.  The defendants had indeed appeared prior to the entry of default.  "[An] appearance need not necessarily be a formal one, i.e., one involving a submission or presentation to the

court*." In re Roxford Foods, Inc. v. Ford*, 12 F.3d 875, 881-82 (9th Cir. 1993). Our filing of the *Pro Hac* application evinced our intention to defend this action against the Defendants.  courts have recognized informal appearances where the informal actions of a party manifested intent to defend an action. See *Muniz v. Vidal*, 739 F.2d 699, 700-01 (1st Cir. 1984) (court found presenting motions and counterclaims to adversary tantamount to appearance); *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 692 (D.C. Cir. 1970) (appearance found where "exchanges between the parties . . . were the normal effort to see if the dispute could be adjusted by agreement, but neither party was in any doubt that the suit would be contested if the efforts to agree were unavailing"); *In re Kellar*, 125 B.R. 716, 718-19 (Bankr.N.D.N.Y. 1989) (citing Muniz for an example of "any kind of appearance"); *CSB Corp. v. Cadillac Creative Advertising, Inc.*, 136 F.R.D. 34, 36 (D.R.I. 1990) ("Because [defendant] made an appearance, as evidenced by settlement negotiations, notice was required").  Despite the voidness of the entry of default, we have enough on merits to set aside the default.

**C.      Standard for Setting Aside Entry of Clerical Default is very liberal and All Standards are Satisfied**

13.  It is a clerical entry of default, indeed the standard for setting aside a default is less stringent than setting aside a default judgment, *Feliciano v. Reliant Tooling Co*., 691 F.2d 653, 656-57 (3d Cir. 1982) (stating that "[t]here is a distinction between a default standing alone and a default judgment," and "[l]ess substantial grounds may be adequate for setting aside a default than would be required for opening a judgment"); accord *Mettle v. First Union Nat'l Bank*, 279 F. Supp. 2d 598, 601 (D.N.J. 2003). See also, *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (describing the Rule 55(c) standard as "lenient").

14.  Federal Rule of Civil Procedure 55(c) providing that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)" and a

decision to set aside an entry of default being primarily left to a court's own sound discretion, see *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir. 1951)); and courts disfavoring default because "the interests of justice are best served by obtaining a decision on the merits." *Choice Hotels Int'l, Inc. v. Pennave Assocs., Inc.*, 192 F.R.D. 171, 173 (E.D. Pa. 2000); see also *$55,518.05 in U.S. Currency*, 728 F.2d at 194-95 ("We require doubtful cases to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'").

15.  Mr. Safir request satisfy all the conditions necessary to set aside the default under the Third Circuit criterion.  The Third Circuit requires that courts consider four factors when deciding to vacate the entry of default: (1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions. *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 73 (3d Cir. 1987).

### i.      Vacatur Does not Prejudice Haselkorn

16.  The plaintiff would definitely not be prejudiced by this request. The case has just started. The "[p]rejudice only accrues due to a loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." See *Paris,* 2013 WL 4047638, at *3. Prejudice does not exist here for two reasons. First, this matter is in its early stages. The Court's first pretrial conference is in October of 2020. The motion for *pro hac* admission was just filed which triggered the plaintiff bad faith move of default. Second, Mr. Safir as soon he came back he immediately contacted several attorneys to represent him. Very respectful the Court cannot find that Plaintiff has suffered prejudice. See *Reid v. Cooper Hosp. Univ. Med. Ctr.*, 1992 WL 151746,

at *1 (E.D. Pa. 1992) (finding that a delay of three months did not cause substantial prejudice to the plaintiff). Also, Haselkorn has no claims, as explained in detail, *infra.*

### ii.      The Defendants have Meritorious Defense

17.      As argued in detail in the following paragraphs, Haselkorn has no claim. Any claim if there is any, it belonged to Jamaica Wellness Medical, P.C., (Jamaica) and not to him. **Ex. A.** *Second*, Haselkorn, much to Safir's shock, claimed medical inability and further corroborated by his wife and other medical records, which raises question of the practice of medicine, the source of income. *Third,* Haselkorn wife pleaded guilty of unauthorized practice of medicine, although doctor was involved in other clinics too and he still continues to be a doctor with good standing the state department regulating the medical licenses. **Ex. B**.  Haselkorn was also arrested and indicted, however owing to his medical condition it was found he is medically unfit to stand trial. **Ex. C.** He was never exonerated of the charges, as very improperly articulated by his counselors in the underlying complaint.  Ms. Haselkorn, wife of Haselkorn claims that she ran an unauthorized practice of medicine. **Ex. B.**  It is clear from their own admission that they cannot claim anything on the receivables.  Whether a defendant asserts a meritorious defense is traditionally the most important factor. See *Paris v. Pennsauken Sch. Dist., No. 12-7355* (NLH/JS), 2013 WL 4047638, at *2 (D.N.J. Aug. 9, 2013). A meritorious defense requires more than a mere denial of the claims; indeed, a defendant must "set forth with some specificity the grounds for his defense." *Harad v. Aetna Casualty & Surety Co*., 839 F.2d 979, 982 (3d Cir. 1988). Typically, a party establishes a meritorious defense where "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *Tozer,* 189 F.2d at 244; see also *World Entm't Inc. v. Brown,* 487 F. App'x 758, 761 (3d Cir. 2012). However, the Court is not required to resolve legal issues. See *Emcasco,* 834 F.2d at 74. Rather, a proffered defense is sufficient if it is not facially

unmeritorious. See *id.* Here we are going further, we are just providing the Court now in advance Haselkorn's own statements to dismiss the case without getting into the merits. The plaintiff's own paperwork militates against any relief being granted to him, their own admission defies this case.

### iii. Safir Conduct is Clearly Excusable

18. As is clear from the affidavit, Safir was out of the country when the summons were served. As soon as he came back and came to know about the summons, he immediately started looking for attorneys. And as soon the undersigned was engaged, we promptly filed a motion for *pro hac* admission. Generally, a defendant's conduct is culpable where it results from "willfulness" or "bad faith." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984). The defendant's negligent conduct is culpable only where the defendant acted in "'knowing' disregard [of] court-mandated procedures." Id. at 1183. This standard includes "acts intentionally designed to avoid compliance with court notices" as well as "[r]eckless disregard for repeated communications from plaintiffs and the court[.]" Id. In other words, "more than mere negligence" is required before a court may find that a defendant's conduct was culpable. Id. But here, the action of Mr. Safir and the undersigned cannot show that there was any willful disregard for the Court.

19. Under the foregoing Safir contentions merits a merit based consideration of this argument and thus the default must be vacated. Now the undersigned brings to this Court's attention infirmity of the claims.

### D. The Complaint should be dismissed for lack of standing

### i. Haselkorn lacks Statutory Standing

20. Haselkorn is not the trustee, he lacks standing to bring this action. This Adversary Proceeding is premised upon 11 US.C. §§ 547, 548. Section 547 contemplates that, "the trustee

may . . . avoid any transfer of an interest of the debtor in property. . . . "11 U.S.C. § 547 (b).

Similarly section 548 provides standing to the trustee i.e. "[t]he trustees may avoid any . . . of an

interest of the debtor in property. . . ." 11 U.S.C. § 548 (a)(1).  Haselkorn is not the trustee.  It is

a chapter 13 and not a chapter 11 proceeding, hence Haselkorn is not the debtor in possession, 11

U.S.C. § 1107. It is the trustee alone that has standing to prosecute these actions.  "Here, the

statute appears quite plain in specifying who may use § 506(c) -- "the trustee." *Hartford*

*Underwriters Ins. Co. v. Union Planters Bank,* N.A., 530 U.S. 1, 6 (2000). We have considered

the schedules of the Debtor, Haselkorn--it is not a proceeding for something that will inure to

exemption protection. Section 522(h) provides that "the debtor may avoid a transfer of property

of the debtor or recover a setoff to the extent that the debtor could have exempted such

property . . . if . . . ." Thus, there is no statutory authority for a Chapter 13 debtor to exercise the

avoidance or recovery powers in §§ 547 and 548 except to protect an exemption under the

circumstances described in § 522(h). See also, *Cable v. Ivy Tech State College* (*In re Cable*), 200

F.3d 467, 471 (7th Cir. 1999) ("Section 548 unequivocally limits the avoidance power to the

trustee, and for good reason: . . . It would invite abuse to allow debtors to avoid transfers that the

debtor knew at the time of transfer would work to the detriment of the creditors.").

    21.  Haselkorn cannot become the plaintiff using     avoidance powers of section 547 and

548, the statute does not authorize it. These are not assignable claims; this is a matter of power

which here is inherent to a trustee by the statute, §§547 and 548.  The elements of standing are not

mere pleading requirements but rather an indispensable part of the plaintiff's case, *Lujan*

*Defenders of Wildlife* 504 U.S at 561. The doctrine of standing derives from Article IIIs case or

controversy requirement See *Allen v. Wright* 468 U.S 737 750-51 (1984).  The standing inquiry

focuses on the party seeking to get his complaint before federal court and not on the issues he

wishes to have adjudicated *Flast v. Cohen* 392 U.S 83 99 (1968). The question for the court is whether the plaintiff is the proper party to have brought suit. *Raines v. Byrd* 521 U.S 811 818 (1997).

Here as per the docket the trustee has improperly transferred the standing as if it was a claim,

> ORDERED, that Marie-Ann Greenberg, Standing Chapter 13 Trustee, hereby permits the Debtor, ALEXANDER HASELKORN, solely through his counsel, NORGAARD O'BOYLE & HANNON, to exercise the powers provided to the Trustee under §11 U.SC. 547 and §11 U.S.C. 548 to initiate an Adversary Proceeding seeking to void the Debtor's transfer of all receivables for his business Jamaica Wellness Medical, P.C. to the Defendants, David Safir and DLS Billing and Consulting Corp. . . .

Court Order, Dckt # 38. It just cannot be. Article III prevents such an improper allocation, Title 11 does not bestow such conferment. Also congress alone can create statutory standing and no one else. Here, there is thus neither a statutory nor an article III injury standing allocable to Debtor. Article III standing like subject matter jurisdiction is threshold jurisdictional requirement that can be *neither forfeited nor waived*. See *Lewis v. Casey* 518 U.S 343 349 n.1 (1996); *Hays* 515 U.S at 742; *Natl Org for Women,* 510 U.S at 255. The federal courts are under an independent obligation to examine their own jurisdiction and standing is perhaps the most important of the jurisdictional doctrines. Hays 515 U.S at 742. If plaintiff lacks standing the courts are prohibited from resolving the merits of the complaint. See *Steel Co.*, 523 U.S at 10102.

22. Section 547 and 548 claims are those which belongs to the creditors body—they are not the claims of the estate or the debtor. No doubt Debtor is the cause of preferences and fraudulent conveyances. Congress sometimes has the power to relax or eliminate other supposed minimum requirements of the Article III standing doctrine—including injury-in-fact. *Lujan*, 504 U.S. at 572 n.7. However, it did not grant those powers in the final enactment of title 11. It did only in the context of a chapter 11, where an operating trustee has not been appointed. 11 U.S.C. §1106. A debtor in possession will have the powers of the trustee, but not the chapter 13 debtor.

Standing is not a fungible power, something transactional, as is seen here. Claims under section

547 and 548 are of those creditors and not of the Debtor.  See, e.g., *Gladstone, Realtors v. Vill. of*

*Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima:

A plaintiff must always have suffered 'a distinct and palpable injury to himself' that is likely to be

redressed if the requested relief is granted." (citation omitted)).

23.   A trustee appointed in a bankruptcy case is established as the representative of the

bankruptcy estate and has the capacity to sue and be sued. 11 U.S.C. § 323. Under 11 U.S.C. §§

544, 545, 547, 548, and 549, a trustee is granted exclusive standing to pursue certain avoidance

actions. Use of "the" instead of "a" in Section 323(a) leads the undersigned to conclude that there

can be only one estate representative. See 11 U.S.C. § 323(a). Why is the trustee not bringing this

action?). A Chapter 13 Trustee "is no mere disbursing agent".  *Matter of Maddox*, 15 F.3d 1347,

1355 (5th Cir. 1994).  Instead, "Congress has given the chapter 13 trustee a broad array of powers

and duties".  *Id.*; *see also*, *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995).

24.   Thus it is clear that the power to avoid a debtor's prepetition transfers and even the

obligations to maximize the value of the bankruptcy estate for the benefit of creditors pursuant to

section 544 of the Bankruptcy Code "neither shift[s] ownership of the fraudulent transfer action to

the debtor in possession, nor [constitutes] a debtor's assets" and therefore cannot be sold or

transferred. *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery* (In re

Cybergenics Corp.), 226 F.3d 237, 243 ( 3rd Cir.2000).

**E.      Haselkorn is not Vested with the Claims Conferring Standing**

25.  The Complaint states,

> The Debtor is a physician and board-certified general surgeon specializing
> in occupational medicine, trauma, and hand surgery. In 2017 the Debtor
> purchased Jamaica Wellness Medical, P.C. ("Jamaica"), a medical practice
> located in Brooklyn, NY. Safir was the business manager for Jamaica. In
> his role, Safir directly handled billing and collections for Jamaica.

Comp. ¶ 6.   And further that "on or about November of 2019, Safir offered to purchase the receivables of Jamaica. Safir communicated to the Debtor that the total amount of receivables at that time amounted to approximately $56,000.00. Id.

Further,

> On November 26, 2019, the Debtor entered into an Agreement for Assignment of Jamaica's Accounts Receivable (the "Agreement") with Safir and Safir's company, DLS. Pursuant to the Agreement, Safir and DLS paid the Debtor $10,000.00 for an assignment of all Jamaica's receivables. The Debtor was repeatedly advised by the Defendants that the total outstanding receivables of Jamaica amounted to only $56,000.00. The Debtor accepted the terms of the Agreement in reliance on this representation.

Comp. ¶ 10.   The Agreement and sale of the receivable was between Jamaica Wellness Medical, P.C. ("Jamaica") and DLS Billing and Consulting Corp. **Ex. A.** It was not between Haselkorn and Safir. Further the governing law for the agreement was the New York law.

26.   The parties were free to govern the substantive law that will govern disputes involving contractual and tort claims. *Gay v. CreditLnform,* 511 F.3d 369, 390 (3rd. Cir. 2007)(upholding Virginia choice of law provision in contract where Virginia had substantial relationship to defendant nd tyhere was no reason concluded that Pennsylvania had a materially great interest than Virginia); *Estate of Charania v. Shulman,* 608 F.3d 67, 71 (1st Cir. 2010)(upholding choice of law provision in contract. Hence any construction or understanding of the Agreement has to be governed by New York laws.   And the New York state law is very clear about the receptacle of the legal claim—it is the corporation.

27.   Claims if any belongs to Jamaica and not Haselkorn. Owning membership or stock of Jamaica does not mean that the claims of the Jamaica gets vested in Haselkorn. Here the claim of being underpaid etc. belongs to Jamaica. As so rightly put by the New York Court of Appeals,

> [T]he corporation in respect of corporate property and rights is entirely
> distinct from the stockholders who are the ultimate or equitable owners of

> its assets . . . even complete ownership of capital stock does not operate to
> transfer the title to corporate property and . . . ownership of capital stock
> is by no means identical with or equivalent to ownership of corporate
> property.

*Geltzer v. Brizinova (In re Brizinova),* 592 B.R. 442, 462, 2018 Bankr. LEXIS 2949, *33 (quoting

*Brock v. Poor*, 216 N.Y. 387, 401, 111 N.E. 229 (1915)).  "To similar effect, the Second Circuit

found that under New York law, shareholders do not hold legal title to any of the corporation's

assets. Instead, the corporation - the entity itself - is vested with the title." Brizinova at 462

(quoting  *U.S. v. Wallach*, 935 F.2d 445, 462 (2d Cir. 1991) (*citing*  5A *Fletcher Cyclopedia of the*

*Law of Private Corps*. § 2213, at 323 (Perm. ed. 1990)).

28.    Here the injury is alleged to be caused to Jamaica, a New York corporation. Under

New York law "[i]t is well-settled that shareholders lack standing to assert individual claims based

on injury to the corporation." *Baltus-Michaxelson v. Credit Suisse First Boston, LLC*, 116

Fed.Appx. 308, 309 (2d Cir. 2004); see also *Bingham v. Zolt,* 66 F.3d 553, 561 (2d Cir. 1995).

Even a sole shareholder or one in a closely held corporation typically does not have standing to

sue for injuries to the corporation itself. See *Jones v. Niagara Frontier Transp. Auth.* (NFTA), 836

F.2d 731, 736 (2d Cir. 1987); *Bogart v. Israel Aerospace Indus. Ltd.*, No. 09 CV 4783, 2010 WL

517582, at *4 (S.D.N.Y. Feb. 5, 2010). Here if there is any claim, it belongs to Jamaica and not to

Haselkorn. "[f]or a wrong against a corporation a shareholder has no individual cause of action,

though he loses the value of his investment" (*Abrams v Donati*, 66 NY2d 951, 953, 489 NE2d 751,

498 NYS2d 782 [1985]; see *Citibank v Plapinger*, 66 NY2d 90, 93 n, 485 NE2d 974, 495 NYS2d

309 [1985]; Elenson v Wax, 215 AD2d 429, 626 NYS2d 531 [1995]; G*eneral Motors Acceptance*

*Corp. v Kalkstein,* 101 AD2d 102, 106, 474 NYS2d 493 [1984]).  Under 11 U.S.C. §§ 541-49,

causes of action that do not belong to the corporation cannot be pursued by the trustee. Legally the

trustee stands in the shoes of the corporation and may not reach beyond those rights which have

accrued to the bankrupt entity (even if these third parties assign their claims to the trustee).  See

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, (C.A.2, 1991). Similarly, the lawsuit

personally against Mr. Safir is not tenable. Safir is not DLS Billing and Consulting Corp.

29.    Thus, a claim for damages to a corporation is a corporate asset.   Consequently,

shareholders do not have standing to prosecute, individually, damage claims for diminution in the

value of their interest caused by activities that harm the corporation. Only the corporation may sue

for those damages.

**F.    *In Pari-Delicto* Doctrine Prevents this litigation**

30.    Filing bankruptcy by Haselkorn does not vest Haselkorn with any special extra

defenses or claims. *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340,

357 (3d Cir. 2001) (holding that as a matter of federal bankruptcy law, the debtor-in-possession

succeeds to the claims and defenses of the debtor as they existed at the filing of the bankruptcy

petition, including any *in pari delicto* defenses that may be asserted against it), accord, *OHC*

*Liquidation Trust v. Credit Suisse* (*In re Oakwood Homes Corp.*), 356 Fed. Appx. 622, 625, 2009

U.S. App. LEXIS 27631, *7.

31.    When evaluating a Rule 12(b)(6) motion, in addition to the facts alleged in the

pleadings, "the court may also consider documents deemed to be 'integral' to the pleading."

*Morrison v. Hoffman-LaRoche, Inc.*, No. 14-CV-4476, 2016 U.S. Dist. LEXIS 135291, at *9

(E.D.N.Y. Sept. 29, 2016). The court may take a document integral to the complaint "into

consideration in deciding the defendant's motion to dismiss, without converting the proceeding to

one for summary judgment." *Int'l Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 72

(2d Cir. 1995) (citation omitted). "The 'integral' exception is most often applied to documents

upon which 'the plaintiff's complaint stands or falls, but which for some reason – usually because

the document, read in its entirety would undermine the legitimacy of the plaintiff's claim – was not

attached to the complaint.'" *Morrison,* 2016 U.S. Dist. LEXIS 135291, at *10 citing, *Global

Network Commc'ns v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006). "The exception thus

prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever

drafting." Id. Here, the indictment integral to the Complaint, was known to Plaintiffs, and should

be considered by the Court under the Rule 12 (b) standard. See eg. *Decter v. Second Nature*

*Therapeutic Program, LLC*, 42 F. Supp. 3d 450 (E.D.N.Y. 2014) ("the Power of Attorney is

integral to the [Complaint] and could be considered under the Rule 12 standard. . ."). See also, this

District Court observations:

> court may consider documents that are "integral to or explicitly relied upon
> in the complaint" or any "undisputedly authentic document that a
> defendant attaches as an exhibit to a motion to dismiss if the plaintiff's
> claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc.*
> *Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations
> omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133
> n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In
> that regard, courts may consider matters of public record and exhibits
> attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion
> to dismiss, courts generally consider only the allegations contained in the
> complaint, exhibits attached to the complaint and matters of public
> record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J.
> 2009) (court may consider documents referenced in complaint that are
> essential to plaintiff's claim). Reliance on these types of documents does
> not convert a motion to dismiss into a motion for summary judgment.
> "When a complaint relies on a document . . . the plaintiff obviously is
> on notice of the contents the document, and the need for a chance to refute
> evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White*
> *Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

*Walker v. City of Newark*, 2020 U.S. Dist. LEXIS 115437, *8. Attached is the agreement signed

Hasekorn, **Ex. A,** Indictment of both the plaintiff and his wife and defendant., **Ex. C.** and Affidavit

of Hasekorn wife, **Ex. B**. under the penalty of perjury.

32.    On or about November 15, 2018, both the Hasekorn and his wife and the defendant

Safir were arrested for non-fault medicine insurance fraud scheme. See

https://ag.ny.gov/press-release/2018/ag-underwood-announces-arrests-clinic-owner-doctor-and-attorney-no-fault-medical

In the indictment and in her affidavit, Ms. Roberta Haselkorn was never authorized to practice

medicine. **Ex. B.**

33.     Ms. Roberta Haselkorn was blamed for and pleaded guilty of unauthorized practice

of medicine.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In

evaluating a motion to dismiss, we may consider . . . any 'matters incorporated by reference

or integral to the claim, items subject to judicial notice, matters of public record, orders, [and]

items appearing in the record of the case.'").  Mr. Haselkorn continues to be properly licensed to

practice medicine. It is unclear from the Complaint as to what medical disabilities if any, did the

plaintiff Haselkorn suffered and during what times of his practice in New York. Safir association

with him was based on Safir's impression that Haselkorn was a competent man and a comptent

doctor.

But based on their own admissions Haselkorn and the family, and his wife unauthorized

practice of medicine, raises serious questions of their ability to demand payments for something

that they were not authorized by their own admission. Thus, this lawsuit is not maintainable. See

*Dalton, Dalton, Little, Inc. v. Mirandi,* 412 F. Supp. 1001, 1003, 1976 U.S. Dist. LEXIS 15014,

*2 ("If the contract is illegal, it is the policy of the law to leave the parties where it finds them, and

to deny relief to both sides. The rule is long established."). Also, what value can the plaintiff and

his counsel attach to the receivables if plaintiff own statements and his wife guilty plea contradicts

this adversary complaint. Thus, the value of Haselkorn receivables is Zero.  It is Mr. Safir that has

become a victim here, Mr. Safir lost $10,000.  Mr. Safir trusting that Haselkorn is a doctor in good

standing in good faith entered into an agreement. Now Safir has become a victim, as Haselkorn

knew that accounts receivables he was dumping had no value.  Haselkorn hoodwinked Safir as he

hoodwinked the New York criminal court and now this Court with inflated sense of his entitlements.

34.     The plaintiff, Haselkorn had knowledge about arrest and charges and final conviction of his wife besides himself being arrested. The Court can consider the arrests, affidavits and guilty plea etc. as integral to the Complaint and the underling complaint does reference the criminal case but mischievously mis-characterizing the result of criminal proceeding against Haselkorn—he was declared unfit to stand the trial because of his impaired faculties and other medical conditions. He was _not_ declared exonerated of the charges.  See *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). All these paper works will show that the complaint does not state a viable cause of action.  *In Pari delicto* doctrine prevents this lawsuit.

35.     The doctrine of *in pari delicto* (in equal fault) "derives from the Latin, *in pari delicto potior est conditio defendentis*: 'In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (quoting Black's Law Dictionary 711 (5th ed. 1979)).  There is a criminal misconduct on the part of the Haselkorn [not exonerated, but could not stand trial owing to medical incapacity]—his wife admittedly conducting medicine practice with him being wheeled around. The grand jury indictment filed in the criminal court explicitly brought the following charges:

Penal Law § 176.20:         INSURANCE FRAUD IN THE THIRD DEGREE
                            (8 Counts) (Defendants David Safir, Alexander Haselkorn,
                            Roberta Haselkorn, and Nadezhda Ursulova)

Penal Law§ 155.35(1)        GRAND LARCENY IN THE THIRD DEGREE
                            (6 Counts) (Defendants David Safir, Alexander Haselkorn,
                            Roberta Haselkorn, and Nadezhda Ursulova)

Penal Law§ 155.30(1)        GRAND LARCENY IN THE FOURTH DEGREE
                            (2 Counts) (Defendants David Safir, Alexander Haselkom,
                            Roberta Haselkorn, and Nadezhda Ursulova)

Education Law§ 6512(1)      UNAUTHORIZED PRACTICE OF A PROFESSION

|  | (7 Counts) (Defendant Roberta Haselkom |
| --- | --- |
| Education Law§ 6512(1) | UNAUTHORIZED PRACTICE OF A PROFESSION<br>(7 Counts) (Defendant Alexander Haselkom |
| Penal Law § 175.10 | FALSIFYING BUSINESS RECORDS IN THE<br>FIRST DEGREE (16 counts) (Defendants David Safir,<br>Alexander Haselkorn, and Roberta Haselkom) |

See *Rogers v. McDorman,* 521 F. 3d 381 (5th Cir. 2008). See also *Smithfield Foods, Inc. v. United Food & C.W. Int'l Union*, 254 F.R.D. 274, 280 (E.D. Va. 2008) (finding that that "the clear weight of authority is that the defense of in pari delicto is available as a defense to RICO charge."). See also, *Republic of Iraq v. ABB AG*, 768 F. 3d 145, 167– 68 (2d Cir. 2014) (recognizing an in pari delicto defense in cases where, as a direct result of the plaintiff's 'affirmative wrongdoing,' the plaintiff bears 'at least substantially equal responsibility,' for the violations of which it complains" (citations omitted)). See, e.g., *Decatur Ventures, LLC v. Stapleton Ventures, Inc.,* 2006 U.S. Dist. LEXIS 30507 (S.D. Ind. May 17, 2006) ("Following the guidance from the Seventh Circuit, this court will allow the Defendants to raise the defense of *in pari delicto* in a case where the Plaintiffs seek legal damages." (citations and quotations omitted)). See also *Bondi v. Bank of Am.,* 412 F. Supp. 2d 392, 400– 01 (S.D.N.Y. 2006) ("Accepting these allegations as true, as required on a motion to dismiss, leads to the conclusion that when the corrupt insiders worked with [defendant] to structure the fraudulent transactions and to loot the Company, they were not acting within the scope of their employment. Accordingly, their acts and knowledge cannot be imputed to [the Company.]"). While the criminal case was pending, before Roberta Haselkorn and Mr. Haselkorn makes a deal with the New York Attorney General office, both Haselkorn and his wife duped Safir with empty shells in the name of claims. The Agreement for sale of receivables was signed on October 20, 2019, and reality of the functioning of the Haselkorns came to light only when Safir came to know about the massive fraud of Haselkorns around in January of 2020—although Safir

claims that Haselkorn is medically competent and he is just deceiving the criminal court to get rid

of his criminal liability. Mr. Safir's impression is credible, as here in this Court he is competently

prosecuting his action, signing his petition, understanding his claims, reinstating payements and

confirming Chapter 13 plan.

    36.    The wife of Haselkorn says the following under the penalty of perjury:

> In. approximately October of 2016, another medical doctor with whom we
> were acquainted, Dr. Margaret Sobin, introduced my husband and me to
> David Safir·, a co-defendant in this case. Dr. Sobin told us that David
> Safir, who is not authorized to practice medicine, was looking for a new
> medical director for his clinic in Brooklyn. I'' discussed with David Safo·
> the prospect of my husband treating patients at a no-fault medical clinic
> that he managed in Brooklyn, Jamaica Wellness Medical, P.C. ("Jamaica
> Wellness"), located at 455 Ocean Parkway. I explained my husband's
> stroke history and resulting physical limitations to David Safir, and it was
> understood that I would have to transport, physically accompany, and
> assist my husband in his work at Jamaica Wellness, as he was physically
> unable to. treat patients himself. In approximately December of 2016, my
> husband and I slatted working at Jamaica Wellness. When we started, Dr.
> Sobin trained me and showed me the medical intake questionnaire form
> that we were required to do with every patient. She explained to me what
> treatments could be prescribed based on the patients' siated symptoms.

Haselkorn wife Roberta Haselkorn affidavit, ¶ 4.  And what did she do there for the impugned

billing—the following:

> During the period December of 2016 through and including July of2017
> ("Jamaica Wellness subject period"), I participated in the medical
> treatment of Patients at Jamaica Wellness Medical, P.C. ("Jamaica
> Wellness"), located at 455 Ocean Parkway in Brooklyn, NY with my
> husband, Dr. Haselkorn. I am not, nor have I ever been, licensed to
> practice medicine in New York or any other state. I do not hold any
> professional licensure in New York Stafe or any other state.
>
> My medical treatment of patients included, but was not limited to, the
> following:
>     a) Interviewing patients and making medical diagnoses;
>     b) Prescribing treatment, such as ordering neurological
>     examinations and MRI's;
>     c). Taking patients' blood pressure; and
>     d) Performing range of motion testing.

> Following the above-described medical treatment, Jamaica Wellness
> submitted billing· invoices, including reports documenting said
> treatment, to various insurance carriers.
>
> These invoices requested reimbursement for medical treatment allegedly
> performed by, and/or prescribed by, Dr. Haselkorn. However, as
> described above, the treatment and diagnosis was performed and/or
> prescribed by me, while my husband sat in the room. To my knowledge,
> relying on the representations in those invoices, which listed Dr.
> Haselkorn as the treating and prescribing provider, insurance companies
> sent payments to Jamaica Wellness and associated medical providers1
> for treatment rendered during the Jamaica Wellness subject period. The
> insurance payments and collections for said services have continued after
> July of 20)7, for treatment previously rendered during said period.

Ibid ¶¶ 5 to 7. The Jamaica collections, the issue of this lawsuit does not have any legs to stand

upon. And to use that monies by the bankruptcy estate now, for the wishful payments to the creditor

of the bankrupt estate of Haselkorn just cannot be—no court would allow such recovery formed

of their own claimed wrongdoings. Thus, Haselkorn cannot compel or is prevented from seeking

damages from alleged receivable sale etc., for that would amount to enforcing the activities of that

which  is contrary to their own admissions.  See *Official Committee of Unsecured Creditors of*

*PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006). In the *Edwards* case, a bankruptcy trustee

for a corporation which engaged in a massive Ponzi scheme brought a RICO suit against entities

that allegedly facilitated the debtor's scheme. The Eleventh Circuit held that the RICO claim

against alleged RICO co-conspirators was barred under the *In pari delicto* doctrine, concluding

that the debtor's degree of involvement in the RICO conspiracy warranted application of the

defense.  This Court definitely cannot endorse activities of Haselkorns, rather the Court must deter

Haselkorn and his wife from future criminal misadventures.  *Bateman Eichler, Hill Richards, Inc.*

*v. Berner,* 472 U.S. 299, 306 (1985) (finding that one of two underlying grounds underlying in

pari delicto is that "denying judicial relief to an admitted wrongdoer is an effective means of

deterring illegality"). See *Goldin v. Primavera Familienstiftung, Tag Assocs., Ltd.* (*In re Granite*

*Partners, L.P.),* 194 B.R. 318, 328 (Bankr. S.D.N.Y. 1996) (asserting that denying relief to a

wrongdoer through the in pari delicto doctrine deters illegal conduct).  We are confident that the case filed against the Defendants have no merit and is more reflective of criminal operation of the plaintiff.

### G.    There is no Preference under the Given Facts

37.  Haselkorn demands the Agreement to be set aside as a preference. But the Defendants are not creditors of the Haselkorn or estate.  Simply put, "Preferences" are payments made by a debtor to a creditor during the 90 days before the debtor files for bankruptcy owing to antecedent debts.  These "preferential" payments allow the recipients to receive more than they would have received if the payment had not been made and the debtor's assets were divided equally among all creditors. However, if this Agreement hadn't occurred, Safir is not a creditor of the estate.  11 U.S.C. 547.  There is no antecedent debt, there was no obligation to be satisfied. It is nonsensical assertion of a claim.  Even the Complaint does not claim in any manner that Safir or his company was a creditor with an antecedent debt. Also, the preference applies only if the property transferred belonged to the debtor. Here it is Haselkorn who is in bankruptcy and not Jamaica. No property belonging to Haselkorn has been transferred to the Defendants.

### H.    Judicial Estoppel estops this Chapter 13 and warrants Dismissal of the Proceedings

38.   Haselkorn gained acquittal from the trial [not from the felony criminal charges], as his attorneys and family pleaded his mental and physical incapacity to sustain a criminal trial. We also notice that there was no motion under bankruptcy Rule 1004-1, also there is no knowledge of any appointment of a guardian etc. Irrespective, this case filed by an incompetent individual is not proper filing and this case should be stricken and this adversary proceeding dismissed.

22

39.   A Chapter 13 case is a voluntary one. There is no involuntary Chapter 13. A incapacitated person cannot provide a knowing consent to filing. Bankruptcy Rule 1004.1 says the representative "may" file a Chapter 13 petition. *See In re McDonald,* Nos. 8:04-BK8585-MGW, 8:04-BK-1742-MGW, 2004 WL 2931370, at *3 n.5 (Bankr. M.D. Fla. Dec. 17, 2004) (unpublished) ("It appears that a guardian may administer a Chapter 13 case for the ward."). it is clear that there is no guardian appointed here. The petition is signed by Haselkorn. Based on how Haselkorn achieved his acquittal from the trial--the mental incapacity--this petition is a nullity. It is also clear that the a person lacking legal capacity may not sue or be sued. FRCP 17.  There is no guardian appointed prior to filing. *James v. New York,* 415 Fed. Appx. 295, 297 (2d Cir. 2011) ("district court must not reach the merits of a claim filed on behalf of an incompetent person who is not properly represented by a suitable guardian and through counsel"). The Court is under an obligation to stop the proceeding, if mental capacity is an issue and when it goes to the very heart of the commencement of the case. See *Gibbs ex rel. Gibbs v. Carnival Cruise Lines,* 314 F.3d 125, 135–136 (3d Cir. 2002) (district court must determine whether minor has representative appointed under law of minor's domicile with capacity to bring suit on behalf of minor).

40.   This case warrants dismissal, as the petition is not a voluntary commencement of an action, for a mentally incapacitated person cannot provide a knowing consent. It is incredible that, Haselkorn had been wearing two hats, one of sanity and another of incompetence—sanity in the bankruptcy court and mental incompetence in the New York state criminal court. Respectfully, if this Court does not dismiss the case, then it must have a judicial determination of Haselkorn mental capacity to grant any viability to chapter 13 case, plan confirmation and filing of this adversary. It is clear that Haselkorn has taken two conflicting position of his mental competence. Because of his own conduct—his mental capacity is an issue to be decided.  Indeed, if Haselkorn is properly

before this Court has to be ascertained pursuant to Rule 17(c). It has been held that "a district court would likely abuse its discretion if it failed to consider whether Rule 17(c) applied if a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012) (quoting *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 201 (2d Cir.2003). Haselkorn was not tried in the criminal court owing to his family and attorney's assertion that he is mentally disabled and backing it by medical record. Irrespective, this case now needs to be dismissed for lack of capacity to sue. Judicial estoppel warrants such a result.

41. Further, the claims against Safir have not been listed—in the schedules signed under the penalty of perjury, thus there is unequivocal declaration of not having a claim. Also, the plan has been confirmed in this case with the binding result. *Second*, Haselkorn cannot commence this chapter 13 and or this adversary proceeding. What Haselkorn does here is sanctionable. He has taken conflicting "positions "in bad faith--i.e., with intent to play fast and loose with the court." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780-781, (3rd Cir. 2001) (*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 361 (3d Cir. 1996)). He claimed that he is medically unfit, mentally incompetent to stand a criminal trial, now when it comes to money, he says he is fit. He has "behaved in a manner that is somehow culpable." Id. His statements in both the forums, here and in criminal court are intentional. Haselkorn abused the courts with misleading statements, not only about the medical capacity "to sue or be sued" but also about the factual underpinning of the complained of transactions. He claims in this adversary proceeding,

24

> The Debtor is a physician and board-certified general surgeon
> specializing in occupational medicine, trauma, and hand surgery. In 2017
> the Debtor purchased Jamaica Wellness Medical, P.C. ("Jamaica"), a
> medical practice located in Brooklyn, NY. Safir was the business
> manager for Jamaica. In his role, Safir directly handled billing and
> collections for Jamaica.

Adversary Complaint ¶ 6. And in the filed affidavit by his wife, she claims,

> Initially, David Safir paid my husband and me an hourly rate for our
> work treating patients at Jamaica Wellness. However, in early 2017,
> David Safir proposed that my husband, Dr. Haselkorn, assume
> ownership of Jamaica Wellness; at that time, Jamaica Wellness was
> nominally owned by Dr. Brij Mittal, who was also physically
> incapacitated. David Safir outlined an arrangement in which my
> husband would be the nominal owner, but David Sa fir would actually
> .control the business and legal affairs of the business. The details of
> this arrangement were as follows:

Roberta Haselkorn Affidavit ¶ 8. In the criminal court they claimed that they were not the

owners but employee of the defendant Safir and in bankruptcy court now they are claiming that

they were the owners.   Such inconsistent position borne of greed to mislead the Court should not

be rewarded. This Complaint should be dismissed.

## I.    The Complaint is conjectural and contradictory and not viable under the basics of Pleadings

42.   The plaintiff must specifically identify, and factually plead, each element of a viable

fraudulent transfer and Preferential claims. A trial judge is not "obligated to construct a cause of

action from allegations and a complaint filed by a party who was unwilling or unable to plead the

cause of action himself." *Glenn v. First Nat'l Bank in Grand Junction*, 868 F. 2d 368 (10th Cir.

1989) ("The law recognizes a significant difference between notice pleading and 'shotgun'

pleading."). There is proper link of the facts with the claims and or vice versa. Basics of pleadings

are missing.  See, e.g., *Miller v. Pocono Ranch Lands Prop. Owners Ass'n,* 557 F. App'x 141 (3d

Cir. 2014) (finding plaintiff's allegations concerning the defendants' alleged misconduct are vague

and conclusory and are simply insufficient to state a valid claim); *Goodwin v. Bruggeman-Hatch,*

2014 U.S. Dist. LEXIS 91821 (D. Colo. July 7, 2014) (finding that the vague allusions in the amended complaint to 'relationships' between [one defendant] and other defendants completely unsubstantiated by any fact that might even hint at the existence of a criminal act ). The Complaint here just recites the legal elements of the preference action and fraudulent transfer. However, that is not enough,

> While a complaint attacked by a Rule 12( b)( 6) motion to dismiss does not need detailed factual allegations. . . , a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . , on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . .

*Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007).  While "detail[ ed]" factual allegations are not required, "Rule 8( a)( 2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and this necessitates "some factual allegation in the complaint. . . ." Id. at 555 n. 3.  The Complaint itself has the grounds for dismissal. The Agreement is between the Jamaica and DLS Billing corporation. So, the claim belonged to the company. Also, fraudulent transfer allegations does not ipso facto becomes a preferential issue. The plausibility-in-pleading standard requires the inference alleged in the complaint be more persuasive than alternate inferences. See, e.g., 550 U.S. at 557, 567 (allegation insufficient when it "could just as well" give rise to inference of non-actionable conduct or when "we have an obvious alternative explanation").

43.   The preference claim of section 547 is just very vague. Calling the Defendants creditor does not solve the pleading problem.  See, e.g., *Richmond v. Nationwide Cassel, L.P.*, 52 F. 3d 640 (7th Cir. 1995) ("This amended complaint is so scanty and its allegations so vague that it . . . fails to satisfy the notice requirement of Rule 8.").

**J.       Change of Venue is Warranted of this Adversary Proceeding**

44.      Safir requests transfer venue of this adversary proceeding to the bankruptcy court

Eastern District of New York pursuant to under 28 U.S.C. §§ 1404 and 1412 and Federal Rule of

Bankruptcy Procedure 7087. "A district court may transfer a case or *proceeding under title 11* to

a district court for another district, *in the interest of justice* or for the *convenience of the parties*."

28 U.S.C.§1412. "On motion and after a hearing, the court may transfer an adversary proceeding

or any part thereof to another district pursuant to 28 U.S.C. §1412, except as provided in Rule

7019(2)." FRBP 7087. The Adversary Proceeding is transferrable.

**Arising Under**

44.      The Adversary Proceeding cause of actions premised upon 11 U.S.C § § 547, 548.

There is no doubt that the adversary proceeding stems forth from the cause of action "proceeding

under title 11." A proceedings "aris[e] under title 11" when the Bankruptcy Code itself creates the

cause of action. See *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006) (noting that "arising under"

jurisdiction is limited to proceedings where "the Bankruptcy Code creates the cause of action or

provides the substantive right invoked"). And here it is Bankruptcy Code related. The proceedings

"arising under" are core proceeding in which the bankruptcy court may enter final orders and

judgments, 28 U.S.C. § 157. Thus, the venue transfer provision section 1412 does contemplate a

transfer of a core proceeding.

**Interest of Justice**

45.      The second prong of the section interest of justice is equally very compelling here.

The underlying agreement between Haselkorn and Safir controls here. The Agreement very

unequivocally declares the governing law,

GOVERNING LAW

27

> This assignment shall be governed by, construed, and enforced in accordance with the laws of the State of New York.

Agreement ¶ 12.  It is very clear that barring the bankruptcy this Court would not have personal jurisdiction on the defendants.  It is solely owing to FRBP 7004 which allegedly provides for nationwide service of process by first-class mail, as the basis for the broad personal jurisdiction of the bankruptcy courts.  However, Rule 7004 is not a statute, it alone cannot establish jurisdiction. *Car Care Ctr. of Crystal Lake Ltd. v. Miller* (*In re Miller*), 336 B.R. 408, 412 (Bankr. E.D. Wis. 2005) (Bankruptcy statutes are enacted by Congress, unlike bankruptcy rules, which are promulgated by the Supreme Court.); *Scroggins v. BP Expl. & Oil* (*In re Brown Transp. Truckload*), 161 B.R. 735, 738 (Bankr. N.D. Ga. 1993) ("The Bankruptcy Code is a federal statute, while the [Bankruptcy Rules] are only rules established by the Bankruptcy Rules Committee.")

46.     Nevertheless, it is said that  under Rule 7004(f), service of process consistent with Rule 7004(b) "is sufficient to confer personal jurisdiction over any defendant in a civil proceeding related to a case under the Bankruptcy Code so long as the exercise of jurisdiction is consistent with the constitution and laws of the United States." However, such rules might not comport with the Due Process Clause of the Fifth Amendment. *Insurance Corp of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 695, 702 (1982). The test for personal jurisdiction requires the defendant have "minimum contacts" with the forum and that maintenance of the suit "not offend" traditional notion of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); see also, *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987). There is no contact with New Jersey. We understand that nationwide service of process, such as under section 12 of the Clayton Act, the Securities Act of 1933 and under RICO. However, it has yet to be decided by the Supreme Court if the nationwide service of process is good enough to satisfy due process clause of Fifth Amendment. *Republic of Panama v. BCCI*

*Holdings (Luxembourg) S.A.*, 119 F. 3d 935, 942 (11th Cir. 1997); accord *ESAB Grp. v. Centricut, Inc.*, 126 F. 3d 617, 626 (4th Cir. 1997), cert. denied, 523 U.S. 1048 (1998) (" Where, as here, Congress has authorized nationwide service of process . . . *so long as the assertion of jurisdiction over the defendant is compatible with due process*, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant." (citation and quotation omitted)). See also, *Goldlawr, Inc. v. Heiman*, 369 U.S 463 (1962)(holding that a district court which failed to meet venue requirements and lacked personal jurisdiction over the defendants could nevertheless transfer the action to a district court in which both could be satisfied). New York Eastern District is the proper forum. It is also convenient for all parties. The Agreement is governed by New York. The defendants are New York Brooklyn resident. The criminal case against the debtor and his wife was commenced and prosecuted in New York. The Plaintiff's corporation Jamaica is a New York corporation. All incidents happened in New York. There are several parties who are material witness, and all are based in New York. Thus, for all parties, New York eastern district is the right forum for this Adversary Proceeding. Section 1404(a), an analogous and no doubt applicable here a general venue transfer provisions provides guidelines. Like section 1412, section 1404 (a) reflects a "desire to have federal civil suits tried in the federal system at the place called for in a particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In deciding transfer motions, the court weighs in the balance a number of case-specific factors. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). These include the residence and convenience of parties, the availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining witnesses' testimony, the location in which the operative facts occurred, and any other factor the court deems pertinent to the interests-of-justice inquiry. Transfer under § 1404(a) is available upon a lesser showing of

inconvenience than that required for a forum non convenient dismissal. *Norwood v. Kirkpatrick,* 349 U.S. 29 (1955); *Commodities Futures Trading Comm'n v. Savage*, 611 F. 2d 270 (9th Cir. 1979). Further the Agreement here is very determinative, as it selected the New York laws as governing [albeit not a forum selection clause] under the Supreme Court's decision in *Atlantic Marine Construction Co. v. U.S. District Court*, 134 S. Ct. 568 (2013).

47.     Additionally, the attorneys of the Defendants are only admitted in New York and Mr. Safir is pending a trial in New York Eastern District. Wherefore we request transfer of this proceeding.

**K.      Haselkorn be Ordered to Produce Medical Records of his Mental Health**

48.     Haselkorn has played fast and loose with the courts. To avoid criminal prosecution in New York, his attorneys and wife claimed that Haselkorn is mentally incapacitated.  Here in bankruptcy court he claims complete sanity and robustness that puts us all to notice and definitely the New York Authorities. Since his health is an issue, and we do not find any guardianship in this case, as the petition is signed by Haselkorn, which we claim is a nullity, as he could not have given any knowing consent or information regarding the case, claims and or assertions.  If competence of individual before court is in question, issue is properly raised, and circumstances appropriate, court has power to require mental examination of party before it. *Schuppin v. Unification Church,* 435 F. Supp. 603, 23 Fed. R. Serv. 2d (Callaghan) 1309, 1977 U.S. Dist. LEXIS 15142 (D. Vt.), aff'd, 573 F.2d 1295 (2d Cir. 1977).  Rule 35 is to be accorded broad and liberal treatment, to effectuate purpose that civil trials in federal courts need no longer be carried on in dark. *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S. Ct. 234, 13 L. Ed. 2d 152, 1964 U.S. LEXIS 152 (1964).  Rule 35 is incorporated into bankruptcy procedure by Federal Rule of Bankruptcy Procedure 7035.

49.     Fortunately, the medical assessments of Haselkorn are in existence, the records were shared with the prosecutors, the New York Attorney General. We do not have any access to the same. Mr. Safir trusted that Haselkorn was medically fit, the reason for his working with Haselkorn. It is only now that Safir comes to know about mental incapacity of Haselkorn.   A copy of the same should be produced to this Court and the Chapter 13 trustee and the defendants, as a legal proceeding by an incompetent person is a nullity. Indeed, by claiming that he is sane and capable for prosecuting the civil action and simultaneously claiming mental incapacity in the criminal action, Haselkorn has made his mental health an issue or controversy. For Rule 35 purposes, "controversy" need not be in formal pleadings. *Swift v. Swift,* 64 F.R.D. 440, 18 Fed. R. Serv. 2d (Callaghan) 581, 1974 U.S. Dist. LEXIS 9598 (E.D.N.Y. 1974). Wherefore we request the Court to issue an Order to the Debtor and his counsels to produce medical records showing Haselkorn capacity to sue and be sued or incapacity to sue or be sued, as that is determinative of the sustenance of this case.

## Article III adjudication demanded in all aspects of the Case

50.     The Defendants demands an article III adjudication and do not consent to the jurisdiction of the bankruptcy court.   Both the preference and fraudulent actions complained of here are private right actions, though labeled as Core items. 28 U.S.C. §§ 157(a)(2)(F) and (H). But labels as *core* v. *non-core* does not determine the jurisdiction anymore. See *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)(finding "*taxonomic*" grouping of claims/proceedings core and non-core not determinative and also holding that fraudulent transfer claim is "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions."). The Defendants have not filed any proof of claims.  Similarly, "preference" actions are private rights issues. *Schoenthal v. Irving Trust Co*. 87 U.S. 92 (1932.  *Stern v. Marshall*, 131

S. Ct. 2594, 2616-17 (2011)(suggesting that a preference action against a creditor who had not

filed a proof of claim would not be within the bankruptcy court's adjudicatory power). *see also*

*Granfinanciera, at* 58 (1989) (relying on the same distinction for Seventh Amendment purposes).

<u>Conclusion</u>

Wherefore, it is respectfully requested that default be vacated and this adversary complaint be

dismissed in its entirety and in case the complaint is not dismissed then the following reliefs:

(i.)     Compelling the Plaintiff A. Haselkorn to produce his medical records; and

(ii.)    Transfer of the venue of this proceeding to New York, Eastern District.

Dated: New York NY
August 26, 2020

/s/*Karamvir dahiya*
Karamvir Dahiya

*/s/Narissa Joseph*
Narissa Joseph