SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
---------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

v.

ROBERTA HASELKORN
(A.K.A. ROBERTA BERGMAN)

Defendant.
---------------------------------------------------------------X

HON. DANNY K. CHUN, J.S.C

**AFFIDAVIT OF ROBERTA HASELKORN**

Indictment No. 6641/2018

## AFFIDAVIT OF ROBERTA HASELKORN

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF KINGS      )

ROBERTA HASELKORN, being duly sworn, deposes and says:

1. I am a defendant in the above-entitled action. My home address is 785 Aspen Way, Franklin Lakes, New Jersey 07417. My date of birth is October 7, 1957. I am not under the influence of alcohol or drugs or any substances whatsoever.

2. I make this affidavit in conjunction with my guilty plea under Kings Count Indictment 6641/2018 to Unauthorized Practice of a Profession in violation of Education Law § 6512(1), a Class E felony, and make the following statements under penalty of perjury.

3. I am currently married to Dr. Alexander Haselkorn (DOB: February 6, 1940), a co-defendant in this case. We have been married for approximately 20 years, and currently reside together at the aforementioned address. My husband, Dr. Alexander Haselkorn ("Dr. Haselkorn"), has been licensed to practice medicine in the states of New York and New Jersey since approximately August 18, 1967. In May of 2009, my husband suffered a stroke and, as a result, lost full functioning of the right side of his body. His speech and physical capabilities also became severely limited as a result of the stroke, and he requires the use of a wheelchair.

4. In approximately October of 2016, another medical doctor with whom we were acquainted, Dr. Margaret Sobin, introduced my husband and me to David Safir, a co-defendant in this case. Dr. Sobin told us that David Safir, who is not authorized to practice medicine, was looking for a new medical director for his clinic in Brooklyn. I discussed with David Safir the prospect of my husband treating patients at a no-fault medical clinic that he managed in Brooklyn, Jamaica Wellness Medical, P.C. ("Jamaica Wellness"), located at 455 Ocean Parkway. I explained my husband's stroke history and resulting physical limitations to David Safir, and it was understood that I would have to transport, physically accompany, and assist my husband in his work at Jamaica Wellness, as he was physically unable to treat patients himself. In approximately December of 2016, my husband and I started working at Jamaica Wellness. When we started, Dr. Sobin trained me and showed me the medical intake questionnaire form that we were required to do with every patient. She explained to me what treatments could be prescribed based on the patients' stated symptoms.

5. During the period December of 2016 through and including July of 2017 ("Jamaica Wellness subject period"), I participated in the medical treatment of patients at Jamaica Wellness Medical, P.C. ("Jamaica Wellness"), located at 455 Ocean Parkway in Brooklyn, NY with my husband, Dr. Haselkorn. I am not, nor have I ever been, licensed to practice medicine in New York or any other state. I do not hold any professional licensure in New York State or any other state.

6. My medical treatment of patients included, but was not limited to, the following:
   a) Interviewing patients and making medical diagnoses;
   b) Prescribing treatment, such as ordering neurological examinations and MRI's;
   c) Taking patients' blood pressure; and
   d) Performing range of motion testing.

7. Following the above-described medical treatment, Jamaica Wellness submitted billing invoices, including reports documenting said treatment, to various insurance carriers. These invoices requested reimbursement for medical treatment allegedly performed by, and/or

prescribed by, Dr. Haselkorn. However, as described above, the treatment and diagnosis was performed and/or prescribed by me, while my husband sat in the room. To my knowledge, relying on the representations in those invoices, which listed Dr. Haselkorn as the treating and prescribing provider, insurance companies sent payments to Jamaica Wellness and associated medical providers[1] for treatment rendered during the Jamaica Wellness subject period. The insurance payments and collections for said services have continued after July of 2017, for treatment previously rendered during said period.

8. Initially, David Safir paid my husband and me an hourly rate for our work treating patients at Jamaica Wellness. However, in early 2017, David Safir proposed that my husband, Dr. Haselkorn, assume ownership of Jamaica Wellness; at that time, Jamaica Wellness was nominally owned by Dr. Brij Mittal, who was also physically incapacitated. David Safir outlined an arrangement in which my husband would be the nominal owner, but David Safir would actually control the business and legal affairs of the business. The details of this arrangement were as follows:

a) My husband would become the nominal owner of Jamaica Wellness. As such, we were to provide David Safir with copies of my husband's medical license and other identifying documents. It was my understanding that we would be the owners of the P.C. on paper only, and that we would not be involved in any decision-making, hiring, payroll, or other business activities for Jamaica Wellness.

b) Jamaica Wellness would provide us with the funds to acquire the P.C. for the purchasing price of $60,000. I was not certain who would be receiving this payment, but I believed it would likely be the former owner, Dr. Mittal. David Safir assured me that Jamaica Wellness would cover these payments, as well as any other expenses associated with assuming ownership of the clinic.

c) David Safir introduced us to the attorney for Jamaica Wellness, co-defendant Nadezhda Ursulova, and explained that she would advise us during the process of acquiring the business. Prior to the purchase, Ursulova provided documents for my husband to sign.

---

[1] As a result of my prescriptions, patients treated at other entities located at 455 Ocean Parkway, including LVOV and United Wellness Chiropractor.

3

       On one occasion in March of 2017, she brought my husband and me to the home of Dr. Mittal in Staten Island. We did not enter Dr. Mittal's home; rather, we remained in the car in the driveway. When Ursulova returned to the car, we then went to TD Bank to switch the Jamaica Wellness bank account from Dr. Mittal's name to Dr. Haselkorn's name (see below at paragraph 9).

d) Once the transfer was complete, my husband and I would only have to attend the clinic to see patients one or two times a week. For this work, we would receive monthly payments in the amount of approximately $6,000. Once the transfer was complete, we worked at the clinic on Thursdays for four to six hours at a time.

e) Ursulova also advised us on any interactions with insurance companies regarding our involvement with Jamaica Wellness. She accompanied us to at least one Examination Under Oath with an insurance company regarding Dr. Haselkorn's treatment of patients at Jamaica Wellness.

f) To my knowledge, Ursulova was retained by David Safir on behalf of Jamaica Wellness, and Dr. Haselkorn did not pay her.

9.     As stated above, in March of 2017, Jamaica Wellness was transferred to my husband's name, and my husband and I opened a business checking account for Jamaica Wellness at TD Bank under number 4265820485 ("Jamaica Wellness TD account"). Ursulova assisted us in opening the account by physically accompanying us to the TD Bank branch in Staten Island, and advising us on the transfer of the account from the previous owner of Jamaica Wellness, Dr. Brij Mittal, to my husband, Dr. Haselkorn. Since the account opening, David Safir has also had access to the TD account. To my understanding, Safir makes deposits into this account (from insurance companies, attorneys, and other sources); Safir has online banking access; and Safir uses this account to pay for business expenses for Jamaica Wellness. Safir instructs me as to what amounts of money I may withdraw from the Jamaica Wellness TD account as payment for the involvement that I and Dr. Haselkorn have with Jamaica Wellness.

10.     David Safir provided instructions regarding treatment protocols for patients at Jamaica Wellness. On more than one occasion during the Jamaica Wellness subject period, David Safir expressed his concerns to me regarding the treatments ordered for patients after their initial

4

medical evaluation. He reminded me to follow the checklist that Dr. Sobin had shown me during my "training" at Jamaica Wellness.

11. In approximately March of 2017, shortly after my husband became the nominal owner of Jamaica Wellness, David Safir obtained a signature stamp bearing a copy of my husband's signature. My husband authorized the printing of this stamp, but I do not personally know the extent to which it was used in documents submitted to insurance companies and elsewhere.

12. Beginning in or about December of 2016 and continuing through the present, I have known David Safir's primary mobile telephone number to be 917-202-4710. During that time period, my primary mobile telephone number was, and remains to be, 551-579-2370. David Safir and I have communicated primarily using these telephone numbers since December of 2016.

13. I have listened to a recording of a telephone call made to me on May 17, 2017 at 12:11 pm, in which a male voice speaks with me regarding my husband's testimony at an Examination Under Oath (EUO). I recognize that male voice to be David Safir's voice.

14. In addition to Jamaica Wellness, my husband is the nominal owner of a number of other P.C.'s in New York, as a part of similar arrangements to that which he had with David Safir. I do not have extensive personal knowledge of all of the P.C.s, but I was directly involved with some of them. These other PC's include, but may not be limited to, the following:

   a) *Aspen Medical Care, P.C.* ("Aspen"): This is a clinic located at 2940 Grand Concourse, Suite 1A/1B, Bronx, NY 10458. My husband and I worked in this clinic from approximately July 2016 to August of 2017. As with Jamaica Wellness, my husband was only the nominal owner of the P.C.; he did not manage and control Aspen. At Aspen, I conducted the medical treatment of patients, for my husband who was present in the room with me. My involvement in the medical treatment was very similar to that described in paragraph 6 – I conducted portions of initial medical evaluations and prescribed

5

various treatments. I am not aware if there has been any billing in my husband's name since we left the practice in August of 2017.

b) *Alex Haselkorn MD, P.C.:* I have been informed that the legal address for this P.C. is 455 Ocean Parkway, Brooklyn, NY. To my knowledge, this P.C. was used for range of motion testing. My husband and I did not perform the range of motion testing, and I have no knowledge of where this testing was performed. My husband would sign range of motion reports for testing conducted by other individuals, and we received checks from insurance companies payable to this P.C.

c) *Alexander Haselkorn, P.C.:* I do not know when or by whom this P.C. was established. I have learned that there was billing for treatments allegedly performed by my husband at 717 Southern Blvd, Bronx, NY in May of 2018, but we have never been to that location. However, I do recognize the mailing address associated with this P.C., 2167 East 21st Street, Brooklyn, NY. I believe I have seen that address on an insurance check made payable to my husband.

d) *Citywide Medical Testing, P.C.:* I have been informed that the legal address for this P.C. is 2 Tamara Court, Melville, NY 11747. For this P.C., Dr. Haselkorn reviewed medical reports for range of motion testing. I believe that he was paid a monthly salary for his work with this P.C. Neither Dr. Haselkorn nor I were actually involved in the treatment of patients at this P.C. To my knowledge, Dr. Haselkorn would sign medical forms at our house for this P.C.

e) *Fine Motor Skills Physical Therapy, P.C.:* I do not have any personal knowledge of the P.C., but I have learned that it may be associated with my husband.

f) *Promotion Medical Services P.C.:* I do not have personal knowledge of this P.C., but I have learned that it may be associated with my husband.

g) Between 2012 and 2018, my husband and I also conducted Independent Medical Examinations ("IMEs") in multiple locations in New York State. To my knowledge, there was no affiliated P.C. for these IMEs. I conducted the patient examinations, especially in the interviewing of patients, diagnosis,

6

treatment, and completion of necessary medical forms, while my husband was in the room. The locations included the following:

    i. 285 Lexington Ave, 2nd Floor, New York, NY 10016,

    ii. 77 Tarrytown Road, White Plains, NY 10607,

    iii. 1 Perleman Dr., Spring Valley, NY 10977, and

    iv. 464 Ocean Parkway, Brooklyn, NY 11218.

15. I am only aware of the following bank accounts associated with the above P.C.s:

    a) *Aspen Medical Care, PC*: TD Bank business account number 4332290280, opened on October 4, 2016. My husband and I are co-signatories on this account. I am not aware if anyone else has access to this account or if it is still open.

    b) *Alex Haselkorn MD, P.C.*: TD Bank business account number 4356320378, opened on July 30, 2018. My husband and I are co-signatories on this account. I am not aware if anyone else has access to this account.

16. Since the time of his stroke in 2009, I have served as my husband's sole source of transportation to and from medical clinics. My husband has never been in the presence of a patient without me since his stroke.

17. My husband and I have not seen any patients in person since November 28, 2018. However, we have continued to receive checks related to medical treatment previously provided through the various above-described entities. Some of these checks come directly from insurance companies, and some come from attorneys involved in litigation with insurance companies, such as Koplevich & Feldsherova, P.C. and the Law Offices of Melissa Betancourt, P.C.

7

The foregoing statements have been carefully read by me and after consultation with my attorney, Christopher Madiou. I state that the information contained in this affidavit is true and accurate, under oath, subject to the penalties of perjury.

_____
Roberta Haselkorn

Subscribed and sworn to before me this
13 day of August, 2019

_____
Notary Public

My commission expires: 10/09/2020

MELISSA E COFFEY
Notary Public - State of New York
NO. 01CO6269832
Qualified in Richmond County
My Commission Expires 10/09/2020