**Caption in compliance with D.N.J. LBR 9004-1(b)**
NORGAARD O'BOYLE & HANNON
184 Grand Avenue
Englewood, NJ 07631
(201) 871-1333
Attorneys for Plaintiff
By:    Mark E. Norgaard, Esq. (MEN-7407)
       mnorgaard@norgaardfirm.com

|  |  |  |
|---|---|---|
| _____ | : | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY NEWARK VICINAGE |
| In re: | : |  |
| ALEXANDER HASELKORN, | : | Chapter 13 |
|  | : | Case No. 19-32984 (JKS) |
| Debtor. | : |  |
| - - - - - - - - - - - - - - - - - - - - - - - - - | : | Adversary No. 20-01405 (JKS) |
| ALEXANDER HASELKORN, | : |  |
|  | : |  |
| Plaintiff; | : | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO VACATE DEFAULT AND DISMISS COMPLAINT** |
| v. | : |  |
| DAVID SAFIR and DLS BILLING AND CONSULTING CORP. | : |  |
|  | : |  |
| Defendants. | : |  |
| _____ |  |  |

Alexander Haselkorn, Chapter 13 Debtor ("Debtor" or "Plaintiff"), by and through his

counsel, Norgaard O'Boyle & Hannon, respectfully submit the following in opposition to David

Safir ("Safir") and DLS Billing and Consulting Corp.'s ("DLS) (Safir and DLS collectively

referred to herein as "Defendants") motion to vacate default and dismiss the complaint:

## JURISDICTION AND VENUE

1.      This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

Secs. 157(a) and 1334(a).  The matter is a core proceeding pursuant to 28 U.S.C. Secs. 157(b).

2.      Venue is properly in this Court under 28 U.S.C. Sec. 1409.

## **PROCEDURAL SUMMARY**

3.      The Debtor filed for chapter 13 bankruptcy relief on December 10, 2019 (the "Petition Date"). *See* Docket # 1 to 19-32984. The Debtor's chapter 13 bankruptcy case number is 19-32984.

4.      On June 16, 2020, a consent order between the Debtor and standing chapter 13 trustee was entered permitting the debtor to exercise the powers granted to the chapter 13 trustee under 11 U.S.C. §§ 547 and 548 (the "Consent Order"). *See* Docket # 38 to 19-32984.

5.      Pursuant to the powers granted in accordance with the Consent Order, on July 15, 2020, the Debtor by and through his counsel filed an adversary complaint bearing case number 20-01405 (the "Complaint"). *See* Docket #1.

6.      On July 15, 2020, a summons and notice of pre-trial conference was issued by the court and served on the Defendants on July 16, 2020. *See* Docket #2. The summons stated that the Defendants' answer was due on or before August 14, 2020. *Id.*

7.      On July 31, 2020, Debtor's counsel filed a certification of service confirming that the Defendant was served with the Complaint, summons and notice of pre-trial conference. *See* Docket #3.

8.      On August 18, 2020, Debtor's counsel requested entry of default against the Defendants for failure to file a responsive pleading in accordance with the time proscribed in the summons. *See* Docket #4. On August 20, 2020, the Court entered default against the Defendants. *See* Docket # 6.

9.      On August 19, 2020, Defendants' counsel filed an application to appear *pro hac vice*. *See* Docket #5. The application was granted unopposed on September 4, 2020. *See* Docket #8.

10.     It is worth noting that Defendants' counsel affirmatively misrepresented to the Court that Debtor's counsel requested entry of default *after* the filing of the application to appear *pro hac vice*. *See* Doc. #10, Para. 5. From review of the docket it cannot be refuted that this is false. Debtor's counsel made such request prior to any filing by the Defendants, not after, and certainly not in bad faith.

11.     On September 8, 2020, the Defendants filed the immediate motion seeking to vacate the default and dismiss the Complaint (the "Motion"). *See* Docket # 10. For the reasons set forth below, the Defendants' Motion should be denied in its entirety.

## LEGAL ARGUMENT

### I.      CAUSE DOES NOT EXIST FOR VACATUR OF THE DEFAULT JUDGMENT

12.     Safir alleges that he was out of the country July 18, 2020 through August 2, 2020. Safir has not provided any proof in support of this allegation aside from his assertion. Safir could have easily provided a copy of his plane ticket or passport stamp however he has failed to do so and as such has not adequately demonstrated the fundamental factual basis in support of his excuse for having not filed a responsive pleading on behalf of the Defendants.

13.     By his own admission, Safir returned to the United States on August 2, 2020, and was promptly made aware of the filing of the Complaint. *See* Safir Affidavit at 7. As per the summons, the Defendants' answer was not due until August 14, 2020. It cannot be refuted that the Defendants had almost two weeks to retain counsel and file a response, yet they failed to do so. In fact, neither the Defendants nor their counsel reached out to Debtor's counsel to request an extension. This unjustified delay and neglect is not excusable and therefore cause does not exist to justify vacatur of the default judgment.

14.     As Defendants' Motion states that Mr. Safir "desperately looked for an attorney to defend his case, as soon as he came know about the summons and that too took a few days and

hours." *See* Doc. 10, Para. 7. Notably, the Affidavit contains no such representation.

15.      The Affidavit does not explain how long it took to retain counsel, or *even when Defendants' counsel was retained*. This is clearly relevant to the determination of whether the default should be vacated.

16.      As noted in the Defendants' Motion, "If a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons, except when a different time is prescribed by the court." Fed. R. Bankr. P. 7012.

17.      Rule 7004 establishes first class mail as appropriate service of process:

> "**(1)** Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession….**(3)** Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Fed. R. Bankr. P. 7004.

18.      The Summons was issued on July 15, 2020. Debtor's counsel served the Defendants via first class mail on July 16, 2020. The Defendant failed to file a responsive pleading by August 14, 2020. Defendants admit they were duly served and, objectively, they had ample time to file a response or, at the very least, request an extension from Debtor's counsel and/or the Court.

19.      Defendants argument attempts to conflate the service requirements of Fed. R. Bankr. P. 7012(a) with the Debtor's alleged traveling schedule while conveniently ignoring the fact that, even assuming this to be true, the Defendants still had almost two weeks to file an answer, other responsive pleading, or request an adjournment. Instead, Defendants did nothing. In fact, Defendant's motion only states that it "*might* be too short a time" to expect them to file a response. *See* Doc. 10, Para. 7. Arguments based on speculation and conjecture are not sufficient to overrule the adherence to the black letter of the law.

A.  ENTRY OF DEFAULT WAS NOT A LEGAL ERROR

20.     FRCP 55 states that default judgment may be entered:

> **By the Court.** In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. Fed. R. Civ. P. 55.

21.     Defendants' counsel claims that Debtor's counsel violated the notice requirement of FRCP 55, as he had filed an appearance by and through his *pro hace vice* application.  *See* Doc. 10, Para. 12. However, this argument ignores the fact that the Debtor's counsel requested entry of default prior to the filing of the *pro hac vice* application as clearly evidenced on the docket. Accordingly, the Defendants had filed no appearance prior to the Debtor's request for entry of default and therefore this argument fails.

22.     At the time Defendants' counsel filed the *pro hac vice* application, the docket clearly indicated that the answer was already due, on August 14, 2020 per Docket Entry 2. Counsel even acknowledges that the Docket indicates the due date in the motion, stating, "As per the docket, time the period to answer has expired." *See* Doc. 10, Para. 9.

23.     The Docket also clearly indicated at that time that a Request to Enter Default had already been filed by Plaintiff's counsel on August 18, 2020. *See* Doc. 4.

24.     As Defendants' counsel certifies in the *pro hac vice* application, "I have familiarized myself with the Local Bankruptcy Rules promulgated by this Court and will at all times conduct myself in accordance with such Rules during the conduct of this case." *See* Doc. 5-1, Para. 7. Same is also mandated by the entered Order granting counsel's request. *See* Doc. 8.

25.     It was Defendants' and their counsel's responsibility to review the docket and submit whatever was appropriate at the time, including a motion to extend the time to answer, or

an application to be appointed *pro hac vice* on shortened time, or any other pleadings they felt

were appropriate. This Court is not responsible for intuiting that a Defendant intends to formally

respond to a Complaint, particularly those who are represented by counsel.

26.     To imply that this Court has made a "clerical error" by entering a default in the

normal course, after the time to answer has expired and after a proper request by Plaintiff's counsel,

without an answer or other motion filed, is ludicrous.

### B. THE DEFENDANTS HAVE FAILED TO ESTABLISH THE FACTORS NECESSARY TO VACATE THE DEFAULT JUDGMENT

27.     Rule 9006(b)(1) of the F. R. Bankr. P. provides that:

when an act is required or allowed to be done at or within a specified period by
these rules or by a notice given thereunder or by order of court, the court for cause
shown may at any time in its discretion . . . or
(2) on motion made after the expiration of the specified period permit the act to be
done where the failure to act was the result of excusable neglect.

28.     The Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*

*Partnership*, 507 U.S. 380, 395 (1993), held that the determination of "excusable neglect" under

Rule 9006(b)(1) is an "equitable one, taking account of all relevant circumstances surrounding the

party's omission." The Supreme Court recognized that Congress intended courts, where

appropriate, to "accept late filings caused by inadvertence, mistake, or carelessness, as well as by

intervening circumstances beyond the party's control." Id. at 388.

29.     The reason for delay is the most important factor under *Pioneer. See, e.g., Sunwest*

*Hotel Corp. v. Board of County Comm'rs* (*In re Sunwest Hotel Corp.*), Nos. 92-40079-11, 96-

4187-SAC, 92-7100, 1998 WL 982905, at *10 (D. Kan. Sept. 29, 1998) ("Control over the

circumstances of the delay is 'a very important factor— perhaps the most important single factor—

in determining whether neglect is excusable.'") (quoting *Chanute Kansas v. Williams Nat. Gas*

*Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994), cert. denied, 513 U.S. 1191 (1995))).

30.     As noted above, neither Defendants nor Defendants' counsel indicate when counsel was *actually retained*. Defendant certifies that he returned to the country on August 2, 2020, which would have given him twelve days to respond to the Complaint, yet the *pro hac vice* application was not filed until August 19, 2020.

31.     In the Third Circuit it is well settled that the Court must consider the following factors when analyzing motions to vacate default judgments: "(1) whether the plaintiffs will be prejudiced if the judgment is vacated; (2) whether the defendant has a meritorious defense to the underlying action; and (3) whether the default was the result of the defendant's culpable conduct." *In re Massaro*, 235 B.R. 757, 762 (Bankr. D.N.J. 1999).

32.     In determining whether or not vacatur of default is appropriate, Third Circuit courts have noted that, "The threshold issue in opening a default judgment is whether a meritorious defense has been asserted. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984). The *Hritz* court explained that, "…a meritorious defense is presumptively established when the "allegations of defendant's answer, if established on trial would constitute a complete defense to the action." *Id*.

33.     The "meritorious defense" put forth by the Defendants in their motion lacks legal substance and amounts to little more than mudslinging. The Defendants ignore the blatantly inequitable and unconscionable contract for sale of the receivables which is the underlying substance of the Complaint and instead focus on the Debtor's prior involvement in a criminal matter.

34.     The Defendants make no mention in their Motion that Safir was indicted on 45 criminal counts in the criminal complaint referenced and instead seek to focus on the Debtor's wife's adjudication as grounds as to why the Debtor's Complaint fails. Specifically, the Defendants

entire meritorious defense argument relies on the conclusory notion that Ms. Haselkorn's guilty plea to unauthorized practice of medicine and the Debtor's prior mental state would eliminate the Debtor's bankruptcy estate's entitlement to a claim in the receivables. Though admittedly creative, this logical leap lacks not only merit but reason. It is certainly not grounds to establish a "complete defense" to the underlying action as required.

35.    Notably absent from the response from the Defendants, for example, is *any* legal response regarding the fraudulent conveyance action, nor any representation as to how the Plaintiff's mental capacity would be a defense to such action.

36.    Plaintiff will be prejudiced by the vacatur of default. It is clear through the Defendants' motion that they will seek to introduce confidential information, seek to remove this matter to New York despite Plaintiff's well-documented (and acknowledged by Defendants) physical limitations, and compel Plaintiff to defend himself against completely unfounded and inappropriate allegations.

## II.    THE COMPLAINT SHOULD NOT BE DIMISSED BASED ON STANDING

### A.  THE PLAINTIFF DOES NOT LACK STATUTORY STANDING

37.    Defendant's allege that the Debtor does not have standing as he is not the Trustee and therefore may not utilize 11 U.S.C. §§ 547 and/or 548.

38.    Pursuant to 11 U.S.C. § 544, "The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor." 11 U.S.C. § 544.

39.    As per the Consent Order, the Trustee has permitted the Debtor to "exercise the powers provided to [her] under § 11 U.S.C. 547 and § 11 U.S.C. 548 to initiate an Adversary

Proceeding".

40.    Defendants argue that only the trustee has standing to avoid the transaction forming

the underlying basis for the Complaint due to the language of § 11 U.S.C. 547 and § 11 U.S.C.

548 which both state that, "the trustee may" avoid transfers. They argue that these statutes do not

expressly include debtors therefore it is the trustee alone who can exercise these powers. This fails

as the trustee has validly empowered the Debtor to initiate the immediate action via the Consent

Order.

41.    Again, Defendants seek to conflate the issue by incorporating the limitations of

522(h) which limit a debtor's ability to avoid transfers to the extent that the debtor could have

exempted such property. 11 U.S.C. § 522(h). Though an accurate recitation of that statute, it wholly

ignores that the Debtor has not applied that statute here but rather is employing the powers of the

trustee as created by § 11 U.S.C. 547 and § 11 U.S.C. 548, which have no such limitation. As such

this argument is irrelevant and inapplicable.

42.    Defendants then cite various cases that deal with the necessity of proper standing

in a general sense. Of course, standing is required in order to adhere to due process requirements

however, substantively, this does not address the relevant circumstances of this matter.

43.    In his moving paper's defense counsel argues that the trustee improperly transferred

standing in this matter because, "It just cannot be." However, it can, and is as evidenced by the

Consent Order and common practice of similar orders in circumstances such as this. Ostensibly

the justification that the Defendants draw this conclusory argument from is Article III of the

Constitution. In relying on same, Defendants argue that, "congress alone can create statutory

standing and no one else." Again, it is irrefutable that the trustee has standing to avoid transfers

pursuant to § 11 U.S.C. 547 and § 11 U.S.C. 548. It is also irrefutable that the Consent Order

assigned the trustee's right to do so in this instance to the Debtor. Accordingly, the Defendants'

standing argument fails as the Debtor is acting on the trustee's admittedly valid standing.

44.    Defendants cite *In re Cybergenics Corp*., 226 F.3d 237 (3rd Cir. 2000), in support

of their assertion that the powers of the trustee pursuant to 11 U.S.C. § 544 may not be transferred

to the Debtor.  This case makes no such relevant holding. Instead, the court in C*ybergenics*,

establishes quite the opposite. In support of the propriety of a Debtor to bring avoidance actions,

the *Cybergenics* court stated: "A paramount duty of a trustee or debtor in possession in a

bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of the

creditors.  To fulfill this duty, trustees and debtors in possession have a variety of statutorily

created powers, known as avoidance powers, which enable them to recover property on behalf of

the bankruptcy estate." *In re Cybergenics Corp.,* 226 F.3d 237, 243 (3d Cir. 2000)(internal

citations omitted)

45.    Defense counsel uses a citation from *Cybergenics* in support of its assertion that,

"Thus it is clear that the power to avoid a debtor's prepetition transfers and even the obligations to

maximize the value of the bankruptcy estate for the benefit of creditors pursuant to section 544 of

the Bankruptcy Code 'neither shift[s] ownership of the fraudulent transfer action to the debtor in

possession, nor [constitutes] a debtor's assets' and therefore cannot be sold or transferred. *Official

Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery* (In re Cybergenics Corp.), 226

F.3d 237, 243 (3rd Cir.2000)." *See* Doc. 10, Para. 24. The actual quote reads, "As further evidence

that the avoidance powers neither shift ownership of the fraudulent transfer action to the debtor in

possession, nor are themselves a debtor's assets, we note that *courts have limited a debtor's

exercise of avoidance powers to circumstances in which such actions would in fact benefit the

creditors, not the debtors themselves.*" *In re Cybergenics Corp.,* 226 F.3d 237, 244 (3d Cir.

2000)(*emphasis added*). As per the defendants own cited quote, it is clear avoidance powers are properly vested in Debtors at times, especially when such action benefits the creditors and not the debtor.

46.     As per the Consent Order, "the Debtor shall stipulate to paying a 100% dividend to unsecured creditors in his Chapter 13 plan". Thus, the immediate action is solely for the benefit of the Debtor's creditors and not at all for the benefit of the Debtor himself.

47.     Based on the above, the Debtor has statutory standing to pursue the Complaint and the Court should permit him to do so as the immediate action is solely for the benefit of the creditor body.

B.     THE DEBTOR IS VESTED WITH THE CLAIM CONFERRING STANDING

48.     The Defendants assert that the underlying assignment agreement that is the basis of the Complaint included a choice of law provision requiring application of New York state law. This has no bearing on the appropriateness of this forum to hear a dispute that pertains to the Debtor's bankruptcy estate since the Debtor properly filed his Chapter 13 in this jurisdiction. Furthermore, the Complaint seeks to avoid the assignment based on the federal bankruptcy code, not New York state law.

49.     The substance of the assignment agreement is not at issue but rather the relevant bankruptcy implications of that assignment.  Accordingly, the New York state choice of law provision is wholly irrelevant and need not even mandate application of New York State law in order to adjudicate the relief requested in the Complaint. Simply put, this is a matter of federal bankruptcy law, not a contract dispute.

50.     Defendants argue that Jamaica Wellness Medical, P.C. ("Jamaica"), owns the claim against them, not the Debtor. The Debtor is the sole owner/shareholder of Jamaica. The Debtor's

business interests, including his 100% ownership interest in Jamaica, are assets of the Debtor's

bankruptcy estate. The assets of Jamaica were assigned to the Defendants less than a month prior

to the commencement of the Debtor's bankruptcy case and as such constitute an avoidable transfer

pursuant to § 11 U.S.C. 547 and § 11 U.S.C. 548.

> C.  ANY AND ALL FACTUAL EVIDENCE PRESENTED WITH REGARD TO THE
> MOTION TO DISMISS CANNOT BE CONSIDERED BY THE COURT.

51.    Defendants apply FRCP 12(b)(6) as grounds to dismiss the Complaint. FRCP

12(b)(6) states:

> "Every defense to a claim for relief in any pleading must be asserted in the responsive
> pleading if one is required. But a party may assert the following defenses by motion…
>
> (6)    failure    to    state    a    claim    upon    which    relief    can    be    granted…"
> Fed. R. Civ. P. 12

52.    As an initial matter, pursuant to Fed. R. Civ. P. 12(d), applied to Adversary

Proceedings in Bankruptcy per. Fed. R. Bankr. P. 7012(b), explicitly states that "if, on a motion

under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by

the court, the motion must be treated as one for summary judgment under Rule 56."

53.    Here, the Defendants clearly do not meet the standard for a motion for summary

judgment per Rule 56. Rule 56 requires a statement of material facts. There are also clearly issues

of material fact herein.

54.    More importantly, however, is the fact that evidence of the Debtor's alleged

incapacity is solely submitted by the Defendants' *counsel*, without any exhibits, without any

foundation for such knowledge, and without any legitimate legal rationale for its submission in the

first place. The Defendants' motion was submitted with three exhibits, which were presumably

included with the Affidavit of the Defendant, but this is just Plaintiff's guess; neither the Affidavit

of the Defendant nor the Certification of Counsel make any reference to exhibits or proffer any indication of their authenticity.

55.     The only mention of the Debtor's alleged mental incapacity as a factual matter is in the Certification of Counsel, wherein counsel alleges that the issues raised and facts asserted therein were "borne from [his] extensive discussion with Mr. Safir, public documents and other paperwork provided by Mr. Safir." *See* Doc. 10-1. Notably, Counsel does not indicate that he has any independent knowledge of the criminal proceeding. Counsel also apparently admits that the Debtor is competent, as he notes expressly that "Mr. Haselkorn is completely competent to commence his Chapter 13 case" and that "Mr. Safir thinks Mr. Haselkorn is fit." *Id.*

56.     The Affirmation in Support of Defendants' Motion, again signed by Counsel, not Defendants personally, alleges that "Haselkorn was also arrested and indicted, however owing to his medical condition it was found he is medically unfit to stand trial" and cites to **Exhibit C**. *See* Doc. 10. Although **Exhibit C** does evidence the indictment (of both the Debtor *and* the Defendant), **it does not indicate that the Debtor was found medically unfit to stand trial**. This allegation is made only by Defendants' counsel, with no evidence supporting same presented, with no proffer as to how Defendants' counsel came to such knowledge and no representation as to how same is even relevant to the Complaint.

57.     Given the vast procedural infirmity underlying the factual presentation of this evidence, coupled with the limitations of Rule 12(d), it is clear that the Court should not consider any evidence presented by Defendants' as to the Debtor's mental capacity, or his/his wife's criminal proceeding.

58.     Presentation of this evidence is, at best, highly inappropriate.

D.  THE *IN PARI-DELICTO* DOCTRINE DOES NOT APPLY OR PREVENT THIS

LITIGATION FROM PROCEEDING

59.     In analyzing the standard for motions brought pursuant to FRCP 12(b)(6), the US

Supreme Court held, "To survive a motion to dismiss for failure to state a claim upon which relief

can be granted, factual allegations must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true even if doubtful in fact."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The *Twombly*

court went on to note that, "It makes sense to say, therefore, that an allegation of parallel conduct

and a bare assertion of conspiracy will not suffice." *Id*.

60.     The Defendants assert the *in pari-delicto* doctrine as a defense to the Complaint as

grounds to dismiss the Complaint pursuant to FRCP 12(b)(6).  Third Circuit courts have explained,

"The doctrine of *in pari delicto* provides a defense to a claim against a defendant if

the plaintiff bears fault for the alleged injury." *In re Tropicana Entm't, LLC*, 520 B.R. 455, 469

(Bankr. D. Del. 2014).

61.     Courts have held that such a defense does not apply to the trustee due in part to

equitable considerations favoring innocent creditors, "In pari delicto defense does not apply to the

bankruptcy trustee, as a matter of law; permitting defendants to raise the in pari delicto defense as

a barrier to relief by trustees would thwart the important public purpose served by the framework

of the Bankruptcy Code, and… it is not unfair to permit a trustee to recover funds from third parties

for the benefit of innocent creditors free from the taint of the former officer's wrongful behavior. 11

U.S.C.A. §§ 704, 726." *In re Fuzion Techs. Grp., Inc.*, 332 B.R. 225 (Bankr. S.D. Fla. 2005).

62.     Even if the court were to determine that the *in pari-delicto* defense applies in this

case, it would not be relevant, as the Debtor was not determined to be guilty of any crime.

63.     It is worth noting that the Defendants base their defense on the Debtor's *wife's*

adjudication of guilt, wholly ignoring that Safir was indicted on 45 criminal counts. *See* Doc. 10-5, **Exhibit C**. Despite this, defense counsel seeks to characterize Safir as the "victim". *See* Doc. 10, Par. 33. If this this were the case, it stands to reason that surely the Defendants would have attached the criminal court's finding of Safir's innocence. Yet they did not.

64.     Again, this defense is another red herring proffered to sully the Debtor's name and distract from the merits of the Complaint, without offering valid substantive grounds for dismissal. Defense counsel doesn't even hide its attempt to conflate the identity of Plaintiff stating, "But based on *their* own admissions Haselkorn *and the family, and his wife* unauthorized practice of medicine, raises serious questions of their ability to demand payments for something they were not authorized by their own admissions." *See Id.* at Para. 33. There is only one individual Debtor/Plaintiff in this case. It is not the Debtor's wife or any member of his family. The Debtor was not determined guilty of any crime therefore this defense fails as a matter of law.

65.     The Defendants rely on the holdings of *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) in support of their assertion that the *in pari-delicto* doctrine applies to the immediate case. This, however, ignores the drastically different facts pattern from this case. In *Edwards*, the court determined that the *in pari-delicto* doctrine applied because of the requisite "affirmative wrongdoing" standard for RICO allegations stating, "Because federal RICO violations, as a matter of law, require affirmative wrongdoing rather than passive acquiescence, does not preclude the defense of *in pari delicto* in the RICO context." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1155–56 (11th Cir. 2006). Expounding further, the Edwards court went on, "…a federal RICO violation requires affirmative and deliberate participation. A violation of RICO requires that the defendants "participated, either directly or indirectly, in the conduct of the affairs of the enterprise ... through

a pattern of racketeering activity." *id* at 1156. Though RICO allegations are irrelevant to the criminality discussed herein, it is irrefutable that the Debtor was indicted but never held guilty or liable for any actions in connection with same.

66.    It is axiomatic to American jurisprudence and due process that a party accused of criminality be afforded the presumption of innocence, that is, the accused is presumed innocent until proven guilty. See *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 1692, 48 L. Ed. 2d 126 (1976) ("The presumption of innocence…is a basic component of a fair trial under our system of criminal justice."). The US Supreme Court has noted, "That presumption [of innocence] continues to operate until overcome by proof of guilt beyond a reasonable doubt…" *United States v. Fleischman*, 339 U.S. 349, 363, 70 S. Ct. 739, 746, 94 L. Ed. 906 (1950). This means that all elements of a crime must be established beyond a reasonable doubt by the prosecution in order for a criminal defendant to be held guilty for same. Therefore, ascribing criminality to a party that has not been convicted of same, as the Defendants ostensibly attempt to do in their Motion, runs counter to one of most sacred principles in American criminal justice.

67.    Defendants present no evidence whatsoever, besides the bare allegations of *counsel* who has no personal knowledge, that the Debtor was convicted of any crime. Asserting that he is somehow guilty based on mere allegations or the conduct of another, in this case his wife, is improper. Based on this alone the *in pari-delicto* doctrine must be rejected as it lacks the threshold element necessary to sustain it: guilt of the plaintiff.

    E.  A PREFERENTIAL TRANSFER DID IN FACT OCCUR

68.    In part, 11 U.S.C. § 547 authorizes avoidance of transfers made (1) for the benefit of a creditor, (2) on account of an antecedent debt, (3) made while the debtor is insolvent, (4) made on or within 90 days before the date of the filing of the petition, (5) that enables the creditor to

receive more than it otherwise would have. 11 U.S.C. § 547.

69.     Defendants argue that they are not creditors because, "if this [assignment] Agreement hadn't occurred, then Safir is not a creditor of the estate." *See* Doc. No. 10, Para 37. The Defendants did in fact enter into the agreement with the Debtor therefore assuming the role of creditor. Defendants even admit that the Complaint addresses the "private rights" of the parties.

70.     Additionally, the property transferred was an asset of the Debtor as sole owner of Jamaica. His interest in Jamaica would have been far more valuable but for the Defendants duping him into the assignment agreement. As a result of same, there are fewer assets to distribute to the Debtor's remaining creditors.

F.   JUDICIAL ESTOPPEL DOES NOT ESTOP OR WARRANT DISMISSAL OF THE
     DEBTOR'S CHAPTER 13 AS HE IS NOT AN INCAPACITATED INDIVIDUAL

71.     N.J.S.A. § 3B:1-2 sets out the following:

> "Incapacitated individual" means an individual who is impaired by reason of mental illness or intellectual disability to the extent that the individual lacks sufficient capacity to govern himself and manage his affairs.
>
> The term incapacitated individual is also used to designate an individual who is impaired by reason of physical illness or disability, chronic use of drugs, chronic alcoholism, or other cause (except minority) to the extent that the individual lacks sufficient capacity to govern himself and manage the individual's affairs. N.J.S.A. § 3B:1-2.

72.     In New Jersey, "An incapacitated person by definition 'is unfit and unable to govern himself or herself and to manage his or her affairs,'". *In re Guardianship of Macak*, 377 N.J. Super. 167, 175 (App. Div. 2005). "If the court finds that the person is incapacitated, the court must then independently determine whom to appoint as guardian." *Id* . at 772. To qualify as incapacitated in New Jersey, "A judge must determine by clear and convincing evidence that the individual satisfies the statutory definition of an incapacitated person." *In re Keeter*, No. A-0553-10T4, 2011 WL 2304204, at *3 (N.J. Super. Ct. App. Div. May 11, 2011).

73.   The Debtor is not an "incapacitated individual" within the meaning of New Jersey state law. No evidence has been presented to the court to the contrary. Likewise, no motion or application for appointment of a guardian *ad litem* pursuant to R.4:26-2(b) has been filed for the Debtor. It would be inappropriate for such a determination to be made in, or required by, this venue. Moreover, as addressed above, Defendants argue that the Debtor is, in fact, capable of filing his Chapter 13 proceeding, so it is unclear why this evidence is relevant at all.

74.   Again, Defendants seek to improperly incorporate the substance of the prior criminal matter and that of the immediate Complaint. The Debtor was not convicted of any criminality. Defendants have proffered no evidence to the contrary aside from their bald assertions (again, by Counsel, with no personal knowledge thereof) which have not been supported by any documentation.

75.   This is yet another attempt to conflate issues and facts to disingenuously manifest some plausible nexus in support of Defendants' desire to avoid liability. The Debtor was acquitted at the recommendation of the prosecutor and this was permitted by the NY criminal court, but this statement should not be necessary, as the introduction of any evidence on this point is entirely inappropriate and improper for these proceedings. Any argument that the Debtor is mentally incapacitated as to legally bar him from capably filing a voluntary chapter 13 petition is baseless and warrants no further consideration.

## G. THE COMPLAINT IS NOT CONJECTURAL OR CONTRADICTORY AND IS VIABLE

76.   As stated herein above, "To survive a motion to dismiss for failure to state a claim upon which relief can be granted, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007).

77.    The Debtor has provided documentary proof that a substantial asset was transferred to the Defendants less than a month prior to the filing of his bankruptcy petition. The Defendants were creditors and insiders at the time and paid far less than the reasonably equivalent value of same. This transfer occurred when the Debtor was insolvent or about to become insolvent resultant from same. These, as well as numerous other factual allegations necessary to sustain actions pursuant to 11 U.S.C. §547 and 11 U.S.C. §458 were presented in the Complaint. The facts contained in the Complaint are sufficient grounds to rise beyond mere speculation, especially when viewed in light of the requisite "assumption that all the allegations…are true".

78.    The allegations in the Complaint were specific: that Safir "communicated to the Debtor that the total amount of receivables at that time amounted to approximately $56,000.00", that Safir "offered to pay the Debtor $10,000.00 for all receivables due to Jamaica and to settle any amount due from Plaintiff to Defendants."

H.  CHANGE OF VENUE IS NOT PROPER

79.    Defendants argue that venue should be transferred to the Eastern District of New York. They cite 28 U.S.C. §§ 1404 and 1412 as well as FRBP 7087 as their statutory grounds for same.

80.    In relevant part 28 U.S.C. § 1404 states:

> **(a)** For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to *which all parties have consented*.
>
> 28 U.S.C. § 1404 (*emphasis added*)

81.    Plaintiff does not consent to such a transfer.

82.     28 U.S.C. § 1412 states that, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C.A. § 1412.

83.     Defendants *also expressly admit* that jurisdiction is proper, noting "The United States Bankruptcy Court for the District of New Jersey… has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2), however with a private right dispute." *See* Doc. 10 at Para. 1.

84.     Defendants then curiously argue that this court lacks jurisdiction over them as Fed. R. Bankr. P. ("FRBP") 7004 is not a statute. They proffer that the FRBP and rules such as FRBP 7004 may be in violation of the 5th Amendment. They then assert that the "minimal contacts" standard of *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) is more appropriate for this court and matter than the service rules set out in the FRBP. Contrary to the Defendants' argument the Third Circuit case of *In re Tribune Co.*, already settled this very issue holding that nationwide service of process on an individual named as defendant in an adversary proceeding brought by Chapter 11 debtor did not have to be authorized under statute enacted by Congress, but was proper pursuant to the Bankruptcy Rules. *In re Tribune Co.*, 418 B.R. 116 (Bankr. D. Del. 2009). The Court in *In re Capmark Fin. Grp. Inc*., recognized this longstanding standard stating, "For more than a decade, this Court has consistently held that, because Bankruptcy Rule 7004(d) provides for nationwide service of process, this Court's personal jurisdiction may be assessed on the basis of a defendant's contacts with the United States as a whole, rather than with any particular state." *In re Capmark Fin. Grp. Inc*., 479 B.R. 330, 339 (Bankr. D. Del. 2012).

85.     The *In re Tribune Co.* court went on to also hold that the venue of an adversary proceeding brought by Chapter 11 debtors was proper in the judicial district where a bankrutpcy

case was pending. *In re Tribune Co.* at 116. The *Capmark* court noted that, "It is well-established that a person's residency within the United States constitutes sufficient minimum contacts for the Bankruptcy Court to exercise personal jurisdiction over that person in an action arising under the Bankruptcy Code." *In re Capmark Fin. Grp. Inc.* at 340.

86.    In *Capmark*, the court determined that personal jurisdiction over a defendant to an adversary proceeding for avoidance of a fraudulent transfer was proper when that defendant was not even a resident of the United States, but rather owned a residence in Washington. The *Capmark* court held that, "This United States residence constitutes sufficient minimum contacts for this Court to exercise personal jurisdiction over him." *In re Capmark Fin. Grp. Inc.*, at 341.

87.    *Capmark* also expounded upon the standard and burden in interpreting jurisdictional arguments predicated on "minimum contacts" arguments stating that, "Once a prima facie case of minimum contacts has been made, the burden shifts to the moving party to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable and would make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.' 'The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.'" *Id.*

88.    Defendants argue that the immediate matter should be transferred to the Eastern District of New York in the interest of justice as it is more "convenient for all parties". *See* Doc 10, Para. 46. However, as the Defendants readily point out throughout their Motion, the Debtor is wheelchair bound and has been since suffering a stroke several years ago. He is mentally competent, however requiring him to participate in a litigation across the Hudson River, during a global pandemic and at this advanced age, is exponentially less convenient than having the Defendants appear before this court, which they already have. Additionally, Safir is 30 years the

Debtor's junior. Debtor's counsel is located in New Jersey and forcing this matter to be transferred

to an out of state venue would pose an unreasonable inconvenience and increase in expenses to the

Debtor's estate.

89.     Defense counsel also argues that the Eastern District of New York is more

appropriate as he is only admitted to practice in New York. This wholly ignores the fact that he

has been granted permission to appear *pro hac vice* and, more significantly, that he affirmatively

chose to accept and litigate this case in the first place.  The Defendants were not required or

otherwise forced to retain their current counsel, nor were they prevented from retaining counsel

admitted to practice in, and familiar with the local procedures of, this venue. Nothing is barring

the Defendants from retaining alternative counsel admitted in this jurisdiction. This argument

demonstrates nothing more than a litigation strategy and not a compelling legal justification. There

is nothing improper about this forum, rather the Defendants wish to seize an improper "home court

advantage". This is not necessary, efficient, equitable, or supported by third circuit precedent.

90.     The Defendants have clearly demonstrated their ability to adequately participate in

the proceedings as evidenced by the immediate Motion. Transfer of venue in this matter due to the

convenience of the Defendants is not compelling and in fact would unreasonably burden the

Debtor.

91.     As Safir is a US resident residing in New York and DLS is incorporated in the state

of New York, nationwide service made by first class mail confers proper jurisdiction over them in

this matter pursuant to FRBP 7004. Additionally, this venue, like jurisdiction, is also proper as the

Debtor's chapter 13 case is currently pending here. Defendants have not presented an adequately

compelling case to warrant transfer of venue and as such their request to do so must be denied.

I.   PRODUCTION OF THE DEBTOR'S MEDICAL RECORDS IS NOT
     APPROPRIATE OR RELEVANT TO THIS PROCEEDING

92.     In keeping with the theme of the Motion, Defendants assert that the Debtor "played it fast and loose with the courts" and that "his attorneys and wife claimed that [he] is mentally incapacitated." *See* Doc. No. 10, Para. 48. Defendants then declare that, "Here in bankruptcy court he claims complete sanity and robustness that puts us all to notice and definitely the New York Authorities." *Id*.

93.     Though this language is robust in theatrics, it also does not comport with legal standards for the matters it references. Further, if the Defendants feel that the Debtor's participation warrants involvement of the "New York Authorities" defense counsel, as an officer of the court, is more than capable of proceeding as he sees fit. Practically speaking it is included in this Motion as either a threat, irrelevant character assassination, or distraction from relevant legal standards. Similarly, the Defendants' demand for production of medical records is a "fishing expedition" meant to inconvenience the court, waste judicial resources, and distract from the merits of the bankruptcy precedent in favor of avoiding the transfer in question to which the Defendants financially benefited.

94.     The prior criminal matter appears to have involved a criminal enterprise orchestrated by Safir as evidenced by the criminal complaint. It is of no consequence to the bankruptcy rights of the Debtor and his estate, nor his creditors. That matter was resolved as to the Debtor to the satisfaction of the prosecution and the court that adjudicated that matter, per the Dismissal attached to the Debtor's Certification, filed herewith. Defendants cannot change that result in this forum, certainly not via their Motion. Additionally, the Debtor is not mentally incapacitated in accordance with New Jersey law and there is no court order nor other evidence to the contrary.

95.     As noted above, Defendants themselves admit that the Debtor is mentally fit. *See*

Doc. 10-1. Counsel notes expressly that "Mr. Haselkorn is completely competent to commence his

Chapter 13 case" and that "Mr. Safir thinks Mr. Haselkorn is fit." *Id.*

96.     Defendants cite FRBP 7035, which applies FRCP 35 to adversary proceedings, as

authority for this demand. *See* Doc. 10 at Para. 45. It is contradictory that the Defendants argued

earlier that the FRBP cannot govern jurisdiction as it is not a statute (but merely a rule) but now

assert that the same "mere rules" justify turning the immediate matter into an investigation as to

the Debtor's medical condition. *Id*. Putting aside the Defendants blatant contradiction and self-

serving manipulation of the rules of this court, examination of the Debtor's medical records is not

supported in this instance.

97.     In relevant part, FRCP  35 states that:

> (a) Order for an Examination.
>> (1*) In General.* The court where the action is pending may order a party whose
>> mental or physical condition--including blood group--is in *controversy* to submit
>> to a physical or mental examination by a suitably licensed or certified examiner.
>> The court has the same authority to order a party to produce for examination a
>> person who is in its custody or under its legal control.
>> (2) Motion and Notice; Contents of the Order. The order:
>>> (A) may be made only on motion for *good cause* and on notice to all
>>> parties and the person to be examined; and
>>> (B) must specify the time, place, manner, conditions, and scope of the
>>> examination, as well as the person or persons who will perform it.
> Fed. R. Civ. P. 35 (*emphasis added*).

98.     In *Schlagenhauf v. Holder*, the US Supreme Court discussed the considerations and

applicable standard of FRCP 35's controversy and good cause requirements:

> …the 'in controversy' and 'good cause' requirements of Rule 35. They are not
> met by mere conclusory allegations of the pleadings—nor by mere relevance to
> the case—but require an affirmative showing by the movant that each condition as
> to which the examination is sought is really and genuinely in controversy and that
> good cause exists for ordering each particular examination. Obviously, what may
> be good cause for one type of examination may not be so for another. The ability
> of the movant to obtain the desired information by other means is also relevant.

> Rule 35, therefore, requires discriminating application by the trial judge, who
> must decide, as an initial matter in every case, whether the party requesting a
> mental or physical examination or examinations has adequately demonstrated the
> existence of the Rule's requirements of 'in controversy' and 'good cause,' which
> requirements, as the Court of Appeals in this case itself recognized, are
> necessarily related. *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19, 85 S. Ct. 234,
> 242–43, 13 L. Ed. 2d 152 (1964)

99.    The Debtor's mental condition is not at controversy in the immediate case before this court. Similarly, the Defendants have not demonstrated good cause as to justify such request. The Complaint merely deals with the avoidance of a transfer pursuant to the bankruptcy code made in favor the Defendants. This requires application of the code and relevant precedent to the transfer in question. The Debtor's prior criminal matter is *res judicata* having been already resolved in a court of appropriate jurisdiction and is therefore not relevant to the issues before this court.

100.    The Debtor has not been ordered incapacitated nor does he qualify as such pursuant to New Jersey law. Contrary to the Defendants' demand, the Debtor has no burden to establish his capacity to file suit on his own behalf as to justify this unconventional, inappropriate and irrelevant request.

101.    As established in the court in *Schlagenhauf*, the Defendants have not established the requisite "controversy" or "good cause" requirements to permit their demand. Defendants assert that production of the Debtor's medical records is at controversy before this court resultant from the Debtor's prior criminal adjudication. Yet again, the Defendants seek to conflate unrelated matters.

102.    The criminal matter is separate and apart from the bankruptcy rights issue contained in the Complaint. Defendants cite the nonbinding and unpublished case of *Swift v. Swift* in support of the proposition that, "For Rule 35 purposes, "controversy" need not be in formal pleadings." *See* Doc. 10, Para. 49. It is imperative to consider all dicta in *Swift*, and not just this lone quote.

For example, the *Swift* court also noted, "Rule 35 must be subject to the provisions of Rule 26(c) which permit the court to make 'any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Swift v. Swift*, 64 F.R.D. 440, 442–43 (E.D.N.Y. 1974). Defendants' request is a clear bad faith attempt to annoy the Debtor and cause him undue burden and expense. Their request would result in unnecessary fees, including but not limited to counsel fees, for information that is not in controversy or relevant to the merits of the Complaint.

103.    Additionally, the Debtor has a constitutionally protected right to the privacy of his medical records. The Third Circuit has held that:

> Information about one's body and state of health is matter which the individual is ordinarily entitled to retain within the "private enclave where he may lead a private life." It has been recognized in various contexts that medical records and information stand on a different plane than other relevant material. For example, the Federal Rules of Civil Procedure impose a higher burden for discovery of reports of the physical and mental condition of a party or other person than for discovery generally. Compare Fed.R.Civ.P. 35 with Fed.R.Civ.P. 26(b). See also 8 Wright and Miller, Federal Practice and Procedure: Civil, ss 2237, 2238 (1970). Medical files are the subject of a specific exemption under the Freedom of Information Act. This difference in treatment reflects a recognition that information concerning one's body has a special character.

> *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) (internal citations omitted).

104.    This right to privacy has been acknowledged by New Jersey state courts as well. *See Doe v. Borough of Barrington*, 729 F. Supp. 376, 382 (D.N.J. 1990) ("The Third Circuit recognizes a privacy right in medical records and medical information.").

105.    Accordingly, not only have the Defendants not met the requisite standard of FRCP 35, but the information requested would violate the Debtor's constitutional rights to privacy and therefore same must also bar their request. They are also irrelevant to this proceeding for many reasons, the least of which is that the Defendants have admitted that the Debtor is mentally fit to conduct his bankruptcy and related proceedings.

### III.    ARTICLE III ADJUDICATION DEMAND SHOULD BE DENIED

106.    An Article III adjudication is not the appropriate jurisdiction for this matter as the

current venue has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a) which reads:

> **(a)** Each district court may provide that any or all cases under title 11 and any or all
> proceedings arising under title 11 or arising in or related to a case under title 11 shall be
> referred to the bankruptcy judges for the district. 28 U.S.C. § 157.

107.    The Debtor's chapter 13 case was appropriately filed in this jurisdiction as this is

the district court where he resides. This was not challenged by the Defendants as the rules are clear

that the Debtor's case has no other venue in which to be filed. In accordance with 28 U.S.C. §

157(a), this venue is also the proper jurisdiction in which to bring adversary proceedings pertaining

to assets of the Debtor's estate.

108.    Defendants contradict themselves, stating on one hand that the jurisdiction is

proper, and on the other that they "do not consent to the jurisdiction of the bankruptcy court." *See*

Doc. 10, Para. 1 and Para. 50.

109.    This is a core proceeding pursuant to 28 U.S.C. §  157(b)(2) stating that:

> **(2)** Core proceedings include, but are not limited to—
> **...**
> **(E)** orders to turn over property of the estate;
> **(F)** proceedings to determine, avoid, or recover preferences;
> **...**
> **(H)** proceedings to determine, avoid, or recover fraudulent conveyances;
> 28 U.S.C. § 157

110.    Additionally, 28 U.S.C. § 157 also states that:

> **(3)** The bankruptcy judge shall determine, on the judge's own motion or on
> timely motion of a party, whether a proceeding is a core proceeding under this subsection
> or is a proceeding that is otherwise related to a case under title 11. *A determination that a
> proceeding is not a core proceeding shall not be made solely on the basis that its
> resolution may be affected by State law*.
> **(4)** Non-core proceedings under section 157(b)(2)(B) of title 28, United States
> Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).
> **...**

**(c)(1)** A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.
28 U.S.C.A. § 157

111.    As is clear from the black letter of the law, this is the proper venue for this matter to be heard as it relates to the Debtor's bankruptcy estate and is a core proceeding. Notably, Defendants concede that it is a core proceeding, stating "This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). However, if it is were determined to not be a core proceeding it is still related to the Debtor's estate and therefore would still be triable in this venue pursuant to 28 U.S.C. § 157(b)(2)(c)(1). Accordingly, the Defendants' argument that this matter is more appropriate for Article III adjudication must be denied.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the accompanying certification, the Plaintiff/Debtor respectfully requests that the Motion to Vacate Default, Dismiss the Complaint and for other relief be denied.

Dated: 9/28/20

Respectfully submitted,

/s/ Mark E. Norgaard, Esq.
Mark E. Norgaard, Esq.
Norgaard, O'Boyle & Hannon